Wallace *v.* King.

4-7043                                    170 S. W. 2d 377

Opinion delivered April 12, 1943.

*Norton & Butler,* for appellant.

*Roy D. Campbell,* for appellee.

Robins, J. Appellants, Miss Byrd Wallace and Mrs. Mamie Edwards, daughters and sole heirs at law of J. M. Wallace, deceased, instituted separate, but identical actions, consolidated for trial in the lower court, to enforce specific performance of a compromise agreement alleged to have been entered into between appellants and appllees, Mrs. Mattie King, John Pryor, Jobe Pryor, Jake Pryor, Elizabeth Elliott, Claude Pilkington and Dartha Cameron, and to recover the balance claimed to be due to appellant for rent on two hundred forty acres in St. Francis county, Arkansas, inherited by appellants from their deceased father.

J. M. Wallace died intestate in 1908 leaving surviving him his widow, Lillie Wallace, and his two daughters, Mamie Wallace and Byrd Wallace, appellants, who were then respectively thirteen and two years of age. At the time of his death he owned one hundred sixty acres upon which he resided and another eighty-acre tract not contiguous to the homestead. His widow, Mrs. Lillie Wallace, married Arch Pryor in 1910 and, for some time after their marriage, Mr. and Mrs. Pryor and the two Wallace children lived on the 160-acre tract. Thereafter they moved to Mr. Pryor's residence in Hughes, Arkansas, where Mrs. Pryor died in January, 1938, and Pryor died in May, 1940. Pryor worked both tracts of land up until the death of Mrs. Pryor, and for the year 1938, and cleared up and put into cultivation a considerable amount of the land.

On January 17, 1940, Pryor, who had no children, executed a will in which he made bequests of $1,000 to his sister, Mrs. Mattie King, $500 each to his brothers, John Pryor and Jobe Pryor, his nephew, Jake Pryor, and his stepdaughter, Byrd Wallace, $100 each to his stepdaughter, Mamie Edwards, and Claude Pilkington, $400, and certain real estate to Elizabeth Elliott, $250 to Mrs. Mary Clinton, $300 and an automobile to Dartha Cameron, and $50 and a trailer to May Henderson; and it was provided in his will that, after payment of these specific legacies, his estate should be divided among all the above named legatees in the same proportion as that borne by their respective bequests. He owned at his death a substantial amount of cash and other personalty, several rent houses and other real estate.

After Pryor's death appellants prepared an agreement under the terms of which they were to release their claim for rent alleged to be due them from Pryor for the use of their deceased father's land during the years 1935, 1936, 1937 and 1938, in consideration that all the other legatees under the Pryor will would convey to them their interests in the Pryor residence in Hughes, said to be valued at $4,000, and that each of appellants should be paid the sum of $1,000 in cash. This agreement was signed by Miss Byrd Wallace, Mrs. George H. Edwards

(formerly Mamie Wallace), George H. Edwards, Mattie King, Jake Pryor, Jobe Pryor, John Pryor, Elizabeth Elliott, Claude Pilkington, Dartha Cameron, and Mrs. Evelyn Johnson as mother and natural guardian of Claude Pilkington, a minor; and John Pryor, Jobe Pryor and Jake Pryor and their wives executed a deed to appellants on June 29, 1940, conveying their shares in the residence property at Hughes. The compromise agreement was never signed by May Henderson or Mrs. Mary Clinton.

Being unable to procure the execution of the agreement by all of the legatees appellants prepared, verified and duly presented to C. R. Ransom, executor of Pryor's estate, identical claims, each for the sum of $3,053.99 which appellants alleged was the balance due to each of them by Pryor at the time of his death for rent of the land in question for the years 1935, 1936, 1937 and 1938, after allowing credit for $1,400 which Pryor paid to appellants on October 24, 1938, and certain other credits. The executor of Pryor's estate formally disallowed both of the claims, and, as far as the record shows, these claims were not thereafter filed with or presented to the probate court for allowance.

In the complaints in the cases at bar, filed on February 8, 1941, appellants set up the indebtedness due by Pryor to them for the use of their land, the partially executed compromise agreement, and the facts as to the making and presentation of the claims against the estate; and the prayer of these complaints was that the court order that the compromise agreement be specifically performed by all of the legatees who executed same, but had not carried same out, and that, after proper credit was allowed for the value of the real estate which appellants would thus acquire, the executor of Pryor's estate be required to pay to them the remainder of the amount due to them on their claims under the compromise agreement, and to charge up the proper proportion thereof to the various legatees, all of whom were made defendants. Appellees in their answers denied that appellants had any valid claims against the estate of Arch Pryor, and alleged that the signatures to the compromise agree-

ment and the execution of the deed by some of appellees had been obtained by fraudulent representation made by appellants as to the validity of appellants' claims against the estate of Arch Pryor and as to the value of the property to be conveyed to appellants under the compromise agreement. Appellees pleaded the statute of limitations against any claim for rent for the years 1935 and 1936, and further alleged that the rents for 1935, 1936 and 1937 belonged to Mrs. Pryor and had been received by Mrs. Pryor, and that Arch Pryor had paid to appellants the rents for the year 1938 in the sum of $1,400; and they prayed that the compromise agreement, as well as the deed executed by John Pryor, Jobe Pryor, and Jake Pryor and their wives, be canceled. The chancery court dismissed both complaints for want of equity, and ordered that the deed executed on June 29, 1940, by John Pryor and wife, Jobe Pryor and wife, and Jake Pryor and wife should be canceled; and to reverse this decree this appeal is prosecuted.

The lower court made no specific findings of fact, and it does not appear from the decree on what particular ground the lower court held that the compromise agreement was invalid. The principal ground of invalidity set up in the pleadings was that the execution of this compromise agreement had been procured by fraud and misrepresentation, and there was evidence to support a finding to this effect. The brothers, the sister and the nephew of Pryor, who were his nearest kin, lived in Tennessee, and knew very little about the testator's property; and some of them were apparently of little education or business ability. They testified that they relied upon the statements of appellants to them to the effect that appellants had just and valid claims against the Pryor estate, which would be approved by the executor for much larger amounts than they were willing to accept by way of compromise, and that in reliance on these and other representations, which were found to be false, they signed the compromise agreement. The evidence adduced by appellants to support their claim that they were in fact entitled to collect these rents from the estate of Arch Pryor was not convincing. Pryor culti-

vated the land for only one year (1938) after the death of Mrs. Pryor, and it is undisputed that Pryor paid the taxes accruing during that year, and that on, or about, October 24, 1938, he sent appellants each a check for $700 which was marked "for land rent," and while appellants claim that those checks were merely payments on the account for rent for that year and previous years back to and including 1935, these checks were doubtless given and accepted in payment of the rent for the year 1938.

Mrs. Pryor died in January, 1938, and there is a strong probability that Mrs. Pryor was entitled to all of the rents accruing from this land after her children became twenty-one years old, and up until her death. There was never any allotment of dower or homestead to Mrs. Pryor out of the land of her deceased husband, but she continued for some time to live on the 160-acre tract which she occupied as a homestead. It was the duty of the heirs of Pryor, even though they were minors, to assign dower, and the widow had a right to retain possession until this was done. Section 4430 of Pope's Digest; *Trimble* v. *James*, 40 Ark. 393. Assuming that this entire 160 acres was the homestead of Wallace, and that his wife was entitled to hold it as her homestead during her life, and that all of the land was of equal value, she might have been (after her children became twenty-one years of age) entitled to the possession of the 160 acres as her homestead and of the 80 acres as her dower. Under the law she was entitled to dower or a one-third interest for life in all lands owned by her husband, including the homestead. The aggregate area of both tracts was 240 acres, one-third of which would be 80 acres, so that, if the 160-acre tract constituted the homestead of her deceased husband, she might have been entitled to hold the entire 80-acre tract as her dower. In the case of *Horton* v. *Hilliard*, 58 Ark. 298, 24 S. W. 242, it was held (Headnote 2): "Dower and homestead being distinct rights, a widow, entitled to a homestead in part of the decedent's lands, is entitled also to receive as dower one-third of the entire real estate, including the homestead, and may have it laid off elsewhere than upon the homestead."

Other cases in which the same rule was followed are *Jameson* v. *Jameson,* 117 Ark. 142, 173 S. W. 851; *Ex Parte Grooms,* 102 Ark. 322, 143 S. W. 1063; and *United States Fidelity & Guaranty Company* v. *Edmondson,* 187 Ark. 257, 59 S. W. 2d 488.

While there was testimony adduced on behalf of appellants to the effect that Pryor told them when they came to Arkansas to attend the funeral of their mother in January, 1938, that he would pay them rent for the years 1935, 1936 and 1937, this testimony is considerably weakened by many circumstances shown, among them the fact that one of the appellants testified that in 1937 she had borrowed $100 from Pryor. According to her contention, Mr. Pryor at that time owed her a large sum of money, and it does not seem reasonable that she would have applied for and accepted a loan from a man who was then heavily indebted to her. Another strong circumstance against the theory of appellants is that, after the alleged demand for this rent, payment of which would have consumed a large part of his estate, was said to have been made upon Mr. Pryor by appellants, he executed a will, in 1940, in which he made no mention of this debt, and treated appellants as if they were members of his own family, making specific bequests to them (he bequeathed the same amount to one of them that he gave his own brothers) and making them residuary legatees entitled to share in the balance of his estate remaining after payment of the specific legacies.

But, regardless of the sufficiency of the proof as to fraud in procurement of the compromise agreement, it was void and unenforceable because it was never executed by all of the legatees, as was intended, and the assent of all of them was essential to its validity. One of the legatees was a minor and, while the mother of this minor signed the name of her child to the agreement, it is conceded that this was not of any effect; and two of the legatees, Mrs. Mary Clinton and May Henderson, never signed the agreement at all. This agreement contemplated the payment of $1,000 to each of appellants and the execution of a deed by all the legatees conveying to appellants the Pryor home in Hughes. Appellants

could not have been required to carry out their part of this agreement, in the absence of the execution of the agreement by all of the necessary parties, because they undertook to settle their claims for $2,000 in cash and the execution of a deed conveying to them the interests of all the legatees to the dwelling house and lots in Hughes. In 17 Corpus Juris Secundum, p. 411, it is said: "It is held in numerous cases that, where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed it." In the case of *Ely* v. *Phillips,* 89 W. Va. 580, 109 S. E. 808, a somewhat similar question was involved. In that case it appeared that Phillips, Burr and McCoy owned certain timber land. Ely and Wamsley agreed to purchase the timber on this tract for $5,000. It was assumed that McCoy would accept this proposition, since he had previously expressed satisfaction with this price, and Phillips and Burr and their wives executed a deed conveying the timber to Ely and Wamsley, and Phillips accepted $300 in part payment. The deed was then sent to McCoy, who refused to sign it, and Phillips and Burr thereupon refused to turn the deed over to the purchasers. Suit was brought against Phillips and Burr for specific performance of their contract to convey their interests in the timber. There was some conflict in the testimony as to whether or not the deed had been delivered by Phillips and Burr, before it was sent to McCoy. The supreme court of West Virginia held in that case that, if the deed had been signed by all three of the owners and not delivered, it would have been a sufficient memorandum of a contract of sale, under the statute of frauds, to support the action, but that the contract to sell the timber was never completed, because of the failure of McCoy to sign the deed, saying: "The authorities are uniform in the holding that persons signing a contract prepared for signatures of other persons, to be affixed along with theirs, and intended to be signed by all of the parties named in it, are not bound until all have signed it, and incur no obligation, if any of those who were to have signed it refuse to do so. *Herndon* v. *Meadows,* 86 W. Va. 499, 103 S. E. 404; *Bean* v.

*Parker,* 17 Mass. 591; *Wood* v. *Washburn,* 2 Pick. (Mass.) 24; *Howe* v. *Peabody,* 2 Gray (Mass.) 556; *Russell* v. *Annable,* 109 Mass. 72, 12 Am. Rep. 665.''

We conclude that the decree of the lower court was correct and it is accordingly affirmed.