HERBERT THROWER and VICK HILL, Appellants, v. PEARL KELTNER, Respondent.—No. 40740.—213 S. W. (2d) 476.

Division Two, September 13, 1948.

*C. A. Powell* for appellants.

*M. Walker Cooper* for respondent.

154

[476] WESTHUES, C.—This is a suit wherein plaintiffs seek specific performance of a written contract for the sale of real estate. The trial court, after a hearing, dismissed plaintiffs' petition. An appeal to this court was duly taken.

The sale contract in question was dated May 18, 1943. Plaintiffs, Herbert Thrower and Vick Hill, were described as parties of the second part; the defendant, Pearl Keltner and her Mother, Maude Lawrence [477] Keltner, as parties of the first part. The contract was signed by both plaintiffs and by defendant, Pearl Keltner. Maude Lawrence Keltner did not sign. It was conceded that she was of unsound mind at the time the contract was signed, had been so for some years prior thereto and so continued up to the time

of her death which occurred shortly before the filing of this suit on May 9, 1947. Respondent in her brief insists that the contract itself shows it was incomplete and never took effect as a binding agreement. This argument is advanced solely on the theory that it was not signed by one of the parties of the first part.

We cannot agree with respondent that the contract itself shows it not to be binding. Suppose, under the terms of the agreement, respondent had tendered to appellants a good deed and title and demanded the purchase price, could appellants have successfully defended on the ground that one of the parties of the first part had not signed? We think not. See Sec. 3354, Mo. R. S. A., R. S. Mo., 1939, which provides in substance that no action shall be brought to enforce a contract for the sale of real estate unless the agreement shall be in writing and *signed by the parties to be charged therewith.* Under note 235, Vol. 10, page 599, Mo. R. S. A., R. S. Mo., 1939, we find cases holding that a contract need be signed only by the party to the charged. Mastin v. Grimes, 88 Mo. 478; Kludt v. Connett, 350 Mo. 793, 168 S. W. (2d) 1068, 145 A. L. R. 1014, 37 C. J. S. 698, Sec. 206. The contract involved in the Kludt case was for the sale of personal property but the rule is the same because of the similarity of the statutes. Compare Sec's. 3354 and 3355, Mo. R. S. A., R. S. Mo., 1939. Both sections contain the words: ". . . signed by the parties to be charged . . ."

Examining the evidence in the record we find that plaintiffs went to see the defendant for the purpose of purchasing the lot in question. Plaintiffs lived in Dexter, Missouri, and the defendant and her Mother in East St. Louis, Illinois. All parties had known each other for years and were on friendly terms. At the time the contract was entered into all parties had knowledge that defendant's Mother was of unsound mind and could not herself sign a contract. The title to the lot was in the name of both defendant and her Mother. The deed conveying the lot to them contained the following clause: ":. . . that in the event of death of either of said grantees" (meaning defendant or her Mother) "before the conveyance or alienation of said premises by grantees, then in that event the survivor is to take the whole title to said premises."

The sale contract recited that plaintiffs had made a $100 down payment to defendant and the balance was to be paid on delivery of a deed. The question naturally presented itself as to how title could be conveyed to plaintiffs because of the insanity of defendant's Mother. In case defendant had died before her Mother there would have been a question as to the title. The evidence shows that after the contract was signed plaintiffs were asking that defendant comply with the agreement. She, at the suggestion of plaintiffs' attorney attempted to secure deeds from her brothers and sisters and their wives and husbands. All signed deeds except one brother-

in-law. Defendant suggested that she have her Mother sign the deed and have the signature witnessed, or that she sign the deed for her Mother. Defendant, during all of this time, recognized the contract as binding and expressed in letters her desire and willingness to convey good title to plaintiffs. Illustrative of defendant's attitude is this quotation from one of her letters:

"Note the part of your letter regarding our signing the deed, I shall have to guide mothers hand. Will that be acceptable to you, Vic & Herbert?

"Of recent months or of late I have been making an X for her & then signing my name under Hers. When the occasion demanded her Signature.

"Want this Deed done in a way that the Boys wont have any trouble with it later on."

The fact that defendant accepted $100 as a down payment and retained the same during all of the time she was attempting to comply with the contract shows that she intended to be bound thereby even though the Mother had not signed. If defendant had been success-ful in obtaining [478] the signatures of all her brothers and sisters and their wives and husbands to a deed the contract would have been fulfilled within a short time after its execution. Other evidence supports the theory that defendant and plaintiffs considered the contract as binding without the Mother's signature. The evidence shows that there was a deed of trust upon the property, signed by the defendant and her Mother, which was executed prior to the time the Mother was of unsound mind. Plaintiffs suggested that defendant deliver her deed to them and then they could have the deed of trust foreclosed and thus clear the title. Defendant refused to do this solely on the ground that advertising the lot for sale under a deed of trust executed by herself would injure her credit. It was further shown in evidence that the defendant attended to all business matters for her Mother and signed her Mother's name on various occasions. Some time prior to the time this suit was filed defendant tendered to the plaintiffs the $100 she received as pay-ment and refused to comply with the contract. It was in evidence that the lot had increased in value. Since the Mother's death plain-tiffs have been willing to accept a warranty deed from the defend-ant, but she has refused to execute such a deed.

The question is, should a court of equity decree specific performance in the circumstances of this case We think so. There is no reason why the defendant should not comply with her contract. She and the plaintiffs understood and knew the condition of defendant's Mother at the time the contract was signed. Defendant's letters dis-close that she was under the impression that she could transfer good title by signing her Mother's name for her on the deed. The conduct of the parties and the letters written after the contract was

signed convinces us that all parties considered the contract binding although the defendant's Mother had not signed. The principal defense was and is that the parties did not consider the contract as binding until all parties had signed. The evidence refutes this theory of the defendant.

Respondent cited authorities to support her contention. On examination we find they are not applicable. Take for example the case of Thornhill v. Herdt, 130 S. W. (2d) (Mo. App.) 175. The contract involved in that case was an agreement creating restrictions against the use of property by members of a certain race. It was a neighborhood scheme. Of course if all owners in the specified area did not sign the contract its very purpose was frustrated. The court held that the evidence showed the agreement was not binding on any of the signers unless all within the area signed. We have no fault to find with the opinion but it is not applicable to the case at hand. Neither do we find anything in 17 C. J. S. 411, 412, Sec. 62, cited by respondent, to support her contention. Defendant was bound by her contract to execute a deed conveying title to plaintiffs. Such a deed would have been valid and would have vested complete title in plaintiffs on the death of defendant's Mother. Hume v. Hopkins, 140 Mo. 65, 41 S. W. 784, 1. c. 785. In 58 C. J. 925, Sec. 88, we note the rule stated as follows:

"A part owner of a tract of land who joins in a contract to sell the entire tract and subsequently becomes the sole owner may be compelled to convey the same."

See also 58 C. J. 900, Sec. 55; and Tebeau v. Ridge, 261 Mo. 547, 170 S. W. 871, 1. c. 878.

In the circumstances this contract should be specifically enforced. The judgment of the trial court dismissing plaintiffs' petition is therefore reversed with directions to the trial court to set aside the order of dismissal and to enter a decree for plaintiffs specifically enforcing the contract. It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Leedy, J.,* and *Ellison, J.,* concur; *Tipton, P. J.,* not sitting.