TAYLOR *v.* CONNELL.

5-2319                                  345 S. W. 2d 4

Opinion delivered April 10, 1961.

*Erwin & Bengel,* for appellant.

*Eldridge & Eldridge,* for appellee.

PAUL WARD, Associate Justice. The question presented here is whether Chancery should decree specific performance of an alleged contract to convey real estate. The trial court refused to order specific performance, hence this appeal seeking a reversal. Appellant, Charles Taylor, whose home is in Newport and who owns property in that vicinity had apparently for some time considered purchasing a small parcel of land adjoining or near the city golf course for the purpose of erecting a drive-in eating place. It seems that he knew this parcel

of land was owned jointly by Josephine W. Connell and the R. D. Wilmans & Sons, Inc., and also knew that Kaneaster Hodges, a Newport attorney, represented the said owners. Mrs. Connell was a non-resident. The said company was domiciled in Newport, and J. E. Wilmans was its president and R. D. Wilmans, its secretary.

*Background Facts.* Sometime in the spring or summer of 1958, appellant began negotiations with Hodges relative to the purchase of said parcel of land. According to appellant he and Hodges reached an agreement as to all essential terms such as the description of the land and the purchase price. Sometime thereafter in October, 1958, Hodges prepared a "Contract for Sale of Land," a copy of which, marked Exhibit 3, was introduced in evidence. It showed Mrs. Connell and the Wilmans Company as "sellers" and appellant as "purchaser"; it showed that the purchaser agreed to pay the total sum of $1,500, with $500 to be paid upon execution of the agreement and the balance of $1,000 to be paid on or before one year; it bound the sellers to execute and deliver to appellant a good warranty deed; it provided that the purchaser might enter into possession subject to the rights of the sellers and it further provided that the purchaser would leave standing such trees as would be designated by a committee of the Newport Country Club. The description of the land set forth in the contract reads:

"All that part of the Northwest Quarter of the Southeast Quarter, Section 12, Township 11 North, Range 3 West bounded on the east by Highway 17 and 14, on the north by the property of the Free Will Baptist Church, on the west by Newport Golf Club property and on the south by the property of the Newport Levee District and/or the public road."

The original contract and all copies thereof were retained in Hodges' office. Neither the original contract or any copies thereof were ever delivered by Hodges to appellant, but the original was signed by Mrs. Connell and by the secretary of the Wilmans Company. It was

never signed by Mr. J. E. Wilmans, the president of Wilmans Company.

Before the contract was written (according to the date shown thereon) and on July 31, 1958, appellant delivered to Hodges a check in the amount of $500 made out to "Kaneaster Hodges, Att." This check was deposited by Hodges in a local bank.

Appellant, apparently thinking the transaction had been completed and everything settled, began cutting timber on the land about the last of November or first of December, 1958. A few days thereafter Mr. Wilmans noticed that the timber was being cut and promptly directed Hodges to have the cutting stopped. Thereafter appellees refused to execute the contract or make a deed to appellant, thus precipitating this litigation.

*Pleadings.* On July 23, 1959, appellees filed a suit in Circuit Court to recover the value of the trees cut by appellant. In due time appellant filed a general denial and also a counterclaim. At the same time appellant moved to transfer to the Chancery Court, which was later granted. In the counterclaim appellant among other things asserted: That the sales contract was executed but appellees refused to give him the original or a copy; that he had paid $500 on the contract and had offered and was then offering to pay the balance due, which appellees refused to accept; that he was put into possession under the contract and had complied with all the terms, and that he was entitled to have the contract specifically performed. The prayer was in accordance with the above assertions.

Appellees filed a reply to the counterclaim which in substance stated: Appellees admit negotiating with appellant for the sale of a certain parcel of land but deny that there was any agreement as to the exact location or description of the land; appellees deny that the Wilmans Company had any authority to sell the land and deny that appellant had any authority to go on the land; they admit that Hodges was given a check for $500 but state that it was not requested but given at

appellant's insistence, and that it was tendered back to appellant when it became clear that no agreement could be reached; they say "it was the design, intent and purpose of all the parties in their negotiations that whatever contract was entered into be integrated in a written contract, which was never executed by the parties thereto"; and that the copy of the contract attached to appellant's counterclaim was obtained from Hodges' office without his knowledge or authority.

For a reversal of the Chancery Court's decree appellant sets forth several assignments of error but they are all embodied in, and we will discuss only, the contentions that: (a) Hodges was the agent of appellees: (b) appellees ratified Hodges' acts and are estopped from denying the contract; and (c) the court should have at least decreed specific performance against Mrs. Connell.

(a) To prevail on the ground that Hodges was an agent and that therefore appellees were bound by all his acts, it was incumbent upon appellant to show that he was something more than just an attorney acting for appellees in closing a sale. It was necessary for appellant to show that appellees had clothed Hodges with full power to sell and dispose of their land. In the case of *McCarroll Agency, Inc.,* v. *Protectory For Boys Under Care of Franciscan Brothers,* 197 Ark. 534, 124 S. W. 2d 816, it was stated: "The authority of an agent, and its nature and extent, where these questions are directly involved, can only be established by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself or make himself agent merely by saying that he is one." We find no evidence in the record to bring Hodges within the rule above stated. It is not contended that he was a real estate agent, and it is not shown that he was acting in any way inconsistent with his employment as an attorney for appellees. Therefore, any mistake that Hodges may have made relative to the location and description of the property in his negotiations with appellant would not be binding upon appellees unless it was later known and ratified by appellees.

(b) It is strongly contended by appellant however that appellees ratified what Hodges did and said during the negotiations. The Chancellor did not set forth the exact grounds upon which he refused specific performance but he evidently found that ratification was not supported by any of the testimony, and we think correctly so. The pivotal issue in this connection relates to the proper description of the land. There is a conflict in the testimony as to whether appellant · was ever authorized to enter upon any portion of the land, but that is not a decisive issue. We gather from the record that there is a small stream running in a northwesterly and southeasterly direction somewhere near the middle of the parcel of land heretofore described. It is appellees' contention that they never understood that they were selling appellant any land north of this stream. Appellant points to the fact that the representative of the Newport Country Club, acting on direction from Hodges, pointed out certain trees north of the stream— indicating that appellant was to get that portion of the land. However, it appears from the record that this representative had no directive from any of the appellees, but possibly did have from Hodges. It is contended by appellant that one of the Wilmans went out to the land with him and that he knew what land was being sold and that he indicated all of the land was to be included. Wilmans' testimony is to the effect that he stood at or near the lower portion of the land and never indicated that appellant was getting that portion north of the stream. It is not denied that as soon as Wilmans knew appellant was claiming and cutting timber on the north portion he immediately intervened. From all of the record we think the Chancellor was justified in finding, and we so find, that there was never a complete meeting of the minds between appellant and appellees as to the exact amount of land involved. Hodges admits that he made a mistake in describing the land and there is nothing to indicate that appellees knew of this mistake until the time when appellant was stopped from cutting timber. Appellees could not be held to have ratified any contract entered into by

appellant and Hodges until after they were in possession of all the material facts. The rule in this contention is very well stated in the case of *Emco Mills* v. *Isbrandtsen Co.*, 210 Fed. 2d 319. At page 324 there appears this statement: "The law of Arkansas as announced by the Arkansas Supreme Court is settled that before one can be held to have ratified an unauthorized act of an agent the principal must have knowledge of all the material facts. And ignorance of such facts renders the alleged ratification invalid." The above statement is followed by several Arkansas citations. In support of the conclusion we reach in this connection, it is pointed out that the contract in question was never fully executed, that it remained in Hodges' office, and that it was never delivered to appellant or to appellees. Mr. Hodges testified, among other things, that: "Mr. Wilmans thought and said that Mr. Taylor was buying a triangular tract in the southeast part of what you're talking about . . ." Mr. R. D. Wilmans, among other things, stated: "He (appellant) told me repeatedly that he didn't want to buy any land that there were any trees on, that all he wanted was that three cornered piece . . ." All of this we think strongly indicates that appellant was thinking about one parcel of land and appellees were thinking about another parcel.

(c) We are unable to agree with appellant's contention that, in any event, he is entitled to have specific performance against Mrs. Connell who signed the written contract. Considering that Mrs. Connell owned only an undivided interest in the land in conjunction with the Wilmans Company which owned the rest of the interest, and considering further that Hodges was acting for all of them, it would be unrealistic to assume, in the absence of proof to the contrary, that separate sales were contemplated or that either party agreed to sell independently of the other. That being true we think appellant is barred by the rule set out in 17 C. J. S., page 412 (Contracts, § 62, sub. sec. *signature*) where it is stated: "The question as to whether those

who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument.'' Although our research reveals that there may be some exception not applicable here, the general rule in cases of this nature was approved in *Wallace* v. *King,* 205 Ark. 681 (at page 687), 170 S. W. 2d 377, where there appears this statement: ''The authorities are uniform in the holding that persons signing a contract prepared for signatures of other persons, to be affixed along with theirs, and intended to be signed by all of the parties named in it, are not bound until all have signed it, and incur no obligation, if any of those who were to have signed it refuse to do so.'' In addition to the above we also note, as before mentioned, that the contract was not delivered, that Hodges was not clothed with authority to sell land, that there was no meeting of the minds, and, in addition, there is no evidence that Mrs. Connell ratified the mistake made in the description of the land.

It follows from the above that the decree of the trial court must be, and it is hereby, affirmed.

Affirmed.