Mancil SMITH, Plaintiff-Respondent,

v.

Donald D. WORSHAM,
Defendant-Appellant,

and

Ethel Sutherland, Defendant.

No. 10131.

Missouri Court of Appeals,
Springfield District.

June 1, 1977.

John Alpers, Jr., Cabool, for defendant-appellant.

Albert F. Turner, Mountain Grove, G. Michael Baker, Springfield, for plaintiff-respondent.

HOGAN, Judge.

In this declaratory judgment action plaintiff Mancil Smith sought construction of a contract for the sale of real estate and an adjudication of the parties' interest in and right to a $5,000 payment made by defendant Worsham upon signing the contract. The cause was tried without a jury. The trial court found and declared that the contract in issue was valid, that defendant Worsham was bound thereby, and that plaintiff and defendant Ethel Sutherland were each entitled to receive one-half the $5,000 payment because of defendant Worsham's default. Worsham appeals.

Worsham lives near Eltopia, Washington, but was "born and raised" in Wright County, and was in Mountain Grove "[s]omewhere around the 10th, 12th of February" 1973. In his words, he was "looking for a place." Defendant Sutherland had employed the plaintiff, a licensed real estate broker, to sell her 645-acre farm located in Douglas County. As we understand the terms of plaintiff's listing, the Sutherland property was to be sold for $135,000; $5,000 was to be paid at the time a contract of sale was executed, and the balance was to be paid in cash or financed upon delivery of the deed. The vendor was willing to "carry" part of the unpaid balance with interest at the rate of seven percent per annum.

At some time after his arrival in Mountain Grove—the chronology of the record is very confused—Worsham contacted Smith and looked over the Sutherland property several times. Worsham agreed to pay the asking price, but "wouldn't go but six and a half percent interest" on the unpaid balance. This proposal was accepted by Mrs. Sutherland as vendor.

Plaintiff prepared a contract on Thursday, February 15, 1973. The contract, according to the plaintiff is a "standard form of agreement" "prepared by the Missouri Real Estate Association". As material here, the contract recites that it was executed the 15th day of February 1973 by defendant Sutherland, a single woman, as seller, and defendant Donald D. Worsham and Yvonne Worsham, his wife, as buyer. The opening paragraph further provides: "The terms Seller or Buyer, may be either singular or plural according to whichever is evidenced by the signatures affixed below." The instrument goes on to recite that the seller agrees to sell and convey and the buyer agrees to purchase 645 acres of land in Douglas County, and that the purchase price for the property shall be $135,000, to be paid as follows: $5,000 upon execution and delivery of the contract, receipt of which is acknowledged, and the balance in cash or by certified check "and if the Seller agrees to finance a part of the purchase price . . . then by delivering the note and deed of trust as hereinafter provided . . .."

A number of optional "financing agreements" follow, and the contract provides, "Only those paragraphs which are completed shall be applicable." The alternative "completed" paragraph provides that the seller agrees to finance a part of the purchase price in the amount of $110,000 to be evidenced by a promissory note payable in installments over a period of 10 years, bearing interest at the rate of 6½ percent per annum, and a first deed of trust. The contract provides that the sale shall be completed at plaintiff's office on April 15, 1973, "or at such other time and place as the parties may mutually agree." The seller agrees to pay plaintiff $10,000 as a commis-

sion. The contract is signed by Donald D. Worsham and Ethel Sutherland. A number of general conditions and provisions follow, one of which is a recital that it is understood that time is of the essence of the contract, and if the Seller "has kept Seller's part of this agreement . . . and the Buyer fails to comply with the requirements of this agreement within ten (10) days [after seller furnishes good title] then the money deposited [as earnest money] shall be paid over to the Seller as liquidated damages . . . and this agreement may or may not be thereafter operative, at the option of the Seller. If the aforesaid money deposited is paid over to the Seller, then it shall be divided equally between the Seller and the said named agent [plaintiff]." In addition to those provisions we have recited, the contract contains a "special agreement" which reads: "Buyers agree to make a payment of $14,150.00 on or before October 15, 1973."

There is no question that Worsham gave plaintiff a check for $5,000 at the time the agreement was signed. The check was made payable to Smith Realty Company, and plaintiff deposited the check to a "trust account" at a local bank. There is further no question that Yvonne Worsham, defendant Worsham's wife, was not present when the negotiation preceding the contract took place, nor when the contract was signed. Yvonne Worsham was in Washington, never saw plaintiff nor discussed the transaction with plaintiff, and became aware that her husband had signed the contract only after defendant Worsham returned to Washington. Defendant Worsham then advised his wife of the transaction, and the two came to Missouri to inspect the property. For whatever reason, Mrs. Worsham refused to sign the contract, defendant Worsham asked that his $5,000 be returned, and this action followed.

 The trial court made complete findings of fact and declared the rights of the parties. Contrary to the plaintiff's assertion, such findings in a declaratory judgment action are not regarded as voluntary,

even though they were not requested; in a declaratory judgment action, the trial court must make a declaration of the rights of the parties and enter that declaration as part of the judgment or decree. *Smith v. Pettis County,* 345 Mo. 839, 843–844, 136 S.W.2d 282, 284–285[1–3] (1940). It is unnecessary to set forth all the findings, although they have been helpful. Of particular concern here are findings 8(a), (b) and (c), acknowledging that defendant Worsham denied the existence of a contract because it was not signed by all the parties between whom it was purportedly made, and declaring as a matter of law 1) that the Statute of Frauds, § 432.010, RSMo 1969, V.A.M.S., was satisfied; 2) that defendant Worsham signed the contract and was bound thereby, and 3) that plaintiff and defendant Sutherland were each entitled to one-half the amount of the earnest money as liquidated damages. We acknowledge that our review is governed by Rule 73.01, para. 3, V.A.M.R., as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), but in this case we have concluded, with deference, that the law has been erroneously applied.

This is not a case in which the broker seeks to recover his commission; the plaintiff's right of recovery, and that of his principal, depend on the validity of the contract of sale. Therefore, the determinative question is whether or not Worsham was bound when the contract on its face purported to be made between the vendor and Worsham and his wife. The defendant claims he was not bound, citing *National Motor Club of Missouri, Inc. v. Noe,* 475 S.W.2d 16, 22–23 (Mo.1972); *Taylor v. Connell,* 233 Ark. 440, 345 S.W.2d 4 (1961); *Wallace v. King,* 205 Ark. 681, 170 S.W.2d 377 (1943), and 17 C.J.S. Contracts § 62, p. 734 (1963). The respondent as vigorously contends that Worsham was bound, citing us to *Kaneko v. Okuda,* 195 Cal.App.2d 217, 15 Cal.Rptr. 792 (1961), and *Bank of United States v. Chemical Bank and Trust Co.,* 140 Misc. 394, 246 N.Y.S. 595 (1930).

We have examined the Missouri precedents which have been cited; they are instructive, though they are factually dissimilar. In *National Motor Club of Missouri, Inc. v. Noe,* supra, 475 S.W.2d 16, the plaintiff filed a seven-count petition against the defendants alleging unfair competition by former employees and a competing motor service club and seeking both damages and injunctive relief. The trial court granted a motion for summary judgment on all counts of the plaintiff's petition. Count VII of the plaintiff's petition was based on a purported shareholder's agreement of noncompetition for as long as the shareholders continued to hold stock in eight affiliated motor service clubs and for a period of two years after each shareholder divested himself of his last share of stock. The defendant against whom this count was directed contended that the contract was unenforceable because all the persons named as parties to the agreement did not sign it. In holding that the trial court did not err in sustaining the motion for summary judgment as to this count, our Supreme Court noted that the agreement recited it was executed between *all* the stockholders of the following corporations, and recited that it was executed for and *"in consideration of the mutual covenants and promises herein contained"*; the court observed that four corporate shareholders and five individual stockholders had not signed the agreement. Citing the general rule stated in 17 C.J.S. Contracts § 62, p. 734,[1] the court called attention to the fact that the plain terms of the contract were that *all* the stockholders sign it before there could exist mutual promises which would furnish the necessary consideration. Analogizing and distinguishing a number of foreign precedents, the court concluded, 475 S.W.2d at 23: "Manifestly, the intention of the parties to the instant contract is shown by its terms not to be binding on any one of them unless all stockholders signed it". Of like import is the decision in *Thornhill v. Herdt,* 130

---

1. "It has been held in numerous cases that, where an instrument has been executed by only a portion of the parties between whom it pur-

ports to be made, it is not binding on those who have executed it."

S.W.2d 175 (Mo.App.1939), which involved a restrictive agreement prohibiting the sale, conveyance, leasing or rental of property in a designated restricted area to black persons. The agreement was signed by only 11 of 46 property holders in the restricted area. The court noted that the agreement contemplated a neighborhood scheme, and that the lack of written assent by all property owners defeated the obvious purpose and intent of the contract.

On the other hand, in *Thrower v. Keltner,* 358 Mo. 152, 213 S.W.2d 476 (1948), the court had before it a contract for the sale of realty which had been signed by only one of the named vendors. The purchasers sought specific performance, which was resisted on the theory that only one of the named vendors had signed. In ordering specific performance, the court observed that the Statute of Frauds requires only the signature of the party to be charged, and noted, among other things, that the vendor who had not signed, defendant's mother, was of unsound mind; that the defendant had attempted to effect the conveyance by obtaining deeds from all her brothers and sisters and their wives and husbands; that the letters written by defendant disclosed she thought she could convey good title without her mother's signature, and during the interval between the execution of the contract in 1943 and the commencement of the action in 1947, defendant had continuously expressed her willingness to convey the property. Further noting that the mother died prior to the commencement of the action, the court held, 358 Mo. at 156–157, 213 S.W.2d at 478[3]: "The conduct of the parties and the letters written after the contract was signed convinces us that all parties considered the contract binding although the defendant's Mother had not

signed." *Shortridge v. Ghio,* 253 S.W.2d 838 (Mo.App.1952), although again not factually apposite, is also instructive in pointing out that even though there may be a memorandum sufficient to satisfy the Statute of Frauds, a contract is unenforceable if it was not assented to as required by its terms or as contemplated by the parties. *Shortridge v. Ghio,* supra, 253 S.W.2d at 844, 845[8].

We have also considered the foreign precedents cited by the parties, but abstract discussion of the law is unnecessary. Generally the authorities support the proposition stated in the encyclopedias and texts: One cannot correctly say, abstractly, that a contract signed by less than all the parties between whom it purports to be made is binding on those who did sign, or that it is not so binding; the question is one of the parties' intention as disclosed by the particular instrument and the conduct of the parties after the instrument was executed.[2] Moreover, parol evidence is admissible to show the nonexistence of a contract or to show the conditions upon which a writing is to become effective, and may therefore be received to show that a contract was to become effective only upon being signed by all persons named as parties, provided the contract does not specifically provide otherwise.[3]

It is not true, however, as we have just noted, that a contract for the sale of land is complete and enforceable because the memorandum was signed by the party sought to be charged, and therefore complies with the Statute of Frauds. *Groh v. Calloway,* 316 Mo. 989, 993, 292 S.W. 65, 66[1] (1927); *Shortridge v. Ghio,* supra, 253 S.W.2d at 844–845; 91 C.J.S. Vendor and Purchaser § 40 (1955). The specific and

---

**2.** 17 C.J.S. Contracts § 62 (1963); 1 A. Corbin, Contracts § 31 at 120–122 (1963); 3 id. § 577 at 392–400 (1960). See, as illustrative, *Taylor v. Connell,* 233 Ark. 440, 345 S.W.2d 4, 8[6, 7] (1961); *Willard F. Deputy & Co. v. Hastings,* 2 W.W.Harr. 345, 32 Del. 345, 123 A. 33, 34–35[1][2][3] (1923); *Schlosberg v. Shannon & Luchs Co.,* 53 A.2d 722, 723[1, 2][3] (D.C.Mun. App.1947); *Madia v. Collins,* 408 Ill. 358, 97 N.E.2d 313, 315–316[1, 2] (1951); *Wiegand v.*

*Tringali,* 22 Mich.App. 230, 177 N.W.2d 435, 437–438[2] (1970); *Miners' and Merchants' Bank v. Gidley,* 150 W.Va. 229, 144 S.E.2d 711, 715–716 (1965).

**3.** 30 Am.Jur.2d Evidence §§ 1033, 1038 (1967); 32A C.J.S. Evidence §§ 967, 972 (1964); 3 A. Corbin, Contracts § 577, at 393–400 (1960); Restatement of Contracts § 241 (1932).

determinative question here, as indicated, is whether the parties intended defendant Worsham to be bound severally or whether it was intended that his wife sign or otherwise assent to the terms of the contract.

▇▇ Applying the general principles we have discussed and the ordinary rules of construction to the contract at hand, it is clear that both defendant Worsham and his wife are parties to the contract. The contract, by plaintiff's own testimony, was prepared on a printed form. The first paragraph recites that it is made and entered into "between Ethel Sutherland, single, the Seller, and Donald D. Worsham and Yvonne Worsham, his wife, the Buyer [sic]." The printed form then recites that "[t]he terms Seller or Buyer, may be either singular or plural according to whichever is evidenced by the signatures affixed below." The instrument then recites, as did the contract discussed in *National Motor Club of Missouri, Inc. v. Noe,* supra, 475 S.W.2d at 22, that it is executed "[f]or and in consideration of the *mutual obligations of the parties hereto*" (our emphasis). The contract is signed by defendant Worsham and defendant Sutherland, but following their signatures and at the end of the contract is a "special agreement" that "*[b]uyers* (our emphasis) agree to make a payment of $14,-500.00 on or before October 15, 1973".

▇▇ These provisions are revealing and are of considerable interest here. As we shall presently see, the preparation of the contract and indeed the conduct of the whole transaction was entrusted to the plaintiff by the vendor, and if it had been the vendor's intention to contract with and bind defendant Worsham severally, there was very little point in naming Mrs. Worsham as a party. In addition, of course, by

the usual rules of construction, the written or typewritten provisions of the contract control over the printed provisions, *National Heater Co., Inc. v. Corrigan Co. Mech. Con., Inc.,* 482 F.2d 87, 89–90[3] (8th Cir. 1973); Restatement of Contracts § 236(e) (1932), and the obvious ambiguity of the language used to designate the purchasers must be resolved against the vendor, who prepared the contract. *Stuart v. Franklin Life Ins. Co.,* 165 F.2d 965, 967[2] (5th Cir. 1948); Restatement, supra, § 236(d). Manifestly, Mrs. Worsham is a party to the contract, which, as we note was executed in consideration of the mutual obligations of the parties.

In this connection, we note that the contract, under the heading "financing agreements", reads: "Seller agrees to finance a part of the purchase price in the amount of $110,000.00 to be evidenced by a negotiable purchase money promissory note in a form approved by Seller to be amortized in equal monthly installments over a period of 10 years bearing interest at the rate of six [and] one half per cent (sic) (6½%) per annum and secured by a 1st deed of trust in a form approved by Seller and covering the property described above".

The question at once arises: What was "the Seller" prepared to approve? The plaintiff was examined about this matter, and because it appears that the plaintiff was given plenary authority to negotiate and close the sale[4] we believe we may accept his statements as those of the vendor.[5] Plaintiff testified on direct examination that he "asked that [defendant Worsham] give me his wife's name for the purpose of making out the contract on the loan that [vendor] was making; that I would

---

4. The vendor—"seller"—testified by pretrial deposition, brought out on cross-examination: "Q. Did Mancil Smith [plaintiff] tell you that [defendant Worsham] was taking the contracts back for his wife to sign? A. Well, it was understood." Mrs. Sutherland answered, "Uh huh [sic]", signifying she remembered her answer. Counsel then asked: "Q. Now, isn't that what your testimony is, that it was understood that [Worsham's] wife would sign those contracts?" Vendor answered, "Well, really, I

wasn't thinking anything about it. *I trusted the business to Mancil, Mr. Smith.* He was doing my work, and *I really didn't study anything about it much.* I just thought *he* would take care of it."

5. 4 J. Wigmore, Evidence § 1078 at 162 (Chadbourn Rev. 1972); McCormick, Evidence § 267 at 640 (2d ed. 1972); Restatement (Second) of Agency § 283 (1958).

have to have those available at the time." Defendant Worsham gave plaintiff Mrs. Worsham's "full name." On cross-examination plaintiff was asked if the "financing portion [sic] of this agreement contemplated that there would be a promissory note and deed of trust executed by Mr. and Mrs. Worsham in favor of Mrs. Sutherland", to which plaintiff answered, without objection, "Yes." Counsel for defendant went over the same question several times, but the unmistakable impact of plaintiff's evidence was that the vendor expected Mrs. Worsham to sign the $110,000 promissory note and to join her husband in securing it with a first deed of trust. Obviously, Mrs. Worsham's assent was necessary if the note and deed of trust were to be executed, and the inescapable fact that the agreement could not be carried out without her assent clearly indicates the parties contemplated that Yvonne Worsham would sign or otherwise formally assent to the contract of sale. *Rinaldi v. Rodzik*, 257 Mass. 238, 153 N.E. 453, 454 (1926); *Belisle v. Barry*, 253 Mass. 475, 149 N.E. 121 (1925).

We realize and bear in mind that the object of a signature is to show mutuality or assent, *National Motor Club of Missouri, Inc. v. Noe*, supra, 475 S.W.2d at 22, and that the assent of a vendor or purchaser may be shown by acts indicating agreement even though the contract was never signed. We also bear in mind that certain recent precedents hold it is possible for the holder of a concurrent estate in realty to become bound severally by his contract to purchase or convey that estate. See, e. g., *Lazare v. Hoffman*, 444 S.W.2d 446, 451–452 (Mo.1969); *Thrower v. Keltner*, supra, 358 Mo. at 156–157, 213 S.W.2d at 478[3]. Those authorities are not at all persuasive here. Defendant Worsham did, perhaps, give the contract some countenance by making the down payment, but the evidence was that as soon as he discovered his wife was unwilling to sign the contract, he attempted to stop payment on the check, and later asked that his money be refunded. Certainly he gave the contract of sale no such countenance as did the vendor in *Thrower v. Keltner*, supra, who

attempted to effect a conveyance by one means or another for four years before asserting that the contract was invalid, nor can defendant Worsham's conduct be compared to that of the purchaser in the often-cited case *Schlosberg v. Shannon & Luchs Co.*, supra n.2, 53 A.2d at 723, in which the purchaser listed the property for sale and advertised it for rent immediately upon execution of the contract. We are convinced that the intention of the parties here was that the contract of sale was not to be binding unless both defendant Worsham and his wife signed it, and because she did not, no binding contract ever existed between the vendor and purchaser. For that reason, and because no actual damage to the vendor was shown, the trial court should have ordered the $5,000 deposit refunded to defendant Worsham.

The judgment is reversed and remanded, with direction to enter a judgment ordering refund of the $5,000 deposit to defendant Donald D. Worsham. The costs on appeal, however, should be taxed to defendant Worsham as well. At least as to one-half the $5,000, plaintiff Smith was only a stakeholder, and we are in no doubt of his good faith in bringing this declaratory judgment action. Under Rule 87.09, V.A.M.R., this court is authorized to make such an award of costs as may be equitable and just. Such authority does not extend to awarding costs in the trial court; allocation or reallocation of the costs there are a matter to be passed on by the trial court, *Durwood v. Dubinsky*, 291 S.W.2d 909, 925[24] (1956), but we can direct that the costs on this appeal be taxed to defendant Worsham and it is so ordered.

All concur.