**Ruth POWELL, Plaintiff-Respondent,**

v.

**The RELIABLE LIFE INSURANCE COMPANY, Defendant-Appellant.**

**No. 44398.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 6, 1983.

Armstrong, Teasdale, Kramer & Vaughan by Richard B. Scherrer and Timothy J. Tryniecki, St. Louis, for defendant-appellant.

Mark I. Bronson, Newman & Bronson, St. Louis, for plaintiff-respondent.

SATZ, Judge.

In this jury waived case, Defendant, Reliable Insurance Company (Reliable), appeals from a judgment entered against it and in favor of Plaintiff, Ruth Powell (Powell). We reverse.

Powell is the named beneficiary of a life insurance policy issued by Reliable on the life of Powell's brother, George Stewart. The policy provided for natural death benefits of $1,000 and accidental death benefits of $1,000. Upon receipt of Powell's claim for death benefits, Reliable apparently forwarded her a check in the amount of $993.05 in payment of the natural death benefits under the policy. This payment was refused by Powell because no payment was made for accidental death. Powell then sued Reliable, seeking recovery of both the natural and accidental death benefits. The cause was submitted to the court on Powell's deposition, certain stipulated facts and exhibits admitted over objections. The court found that Powell was entitled to both the natural and accidental death bene-

fits and ordered judgment in her favor in the amount of $2,000.

Reliable raises six points on appeal. We address the point which disposes of this matter.

As an affirmative defense, Reliable alleged that Powell had assigned her interest in the policy to a funeral home and, alleged, therefore, that Powell was not the real party in interest. However, in its order, the trial court found "that there was no assignment of the policy." On appeal, Reliable contends this finding was not supported by substantial evidence and argues, under the well known standards of review established by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), that the judgment based upon this finding should be reversed. We agree.

Reliable's defense of Powell's assignment of her rights and interest is an affirmative defense for which Reliable carries the burden of proof or risk of nonpersuasion. *See, e.g., Gennari v. Prudential Ins. Co. of America,* 335 S.W.2d 55, 60 (Mo. 1960). To sustain its burden, Reliable introduced a document entitled "Policy Assignment with Power of Attorney" and, on examination of Powell, obtained Powell's admission that it was her signature on this document.[1] Having made this record, Reliable rested on this issue. At this point in the trial, Powell's signature on the document showed her express agreement to and acceptance of the terms and conditions of the document. *See, e.g., National Motor Club of Missouri Inc. v. Noe,* 475 S.W.2d 16, 22 (Mo.1972); *see also Smith v. Worsham,* 552 S.W.2d 367, 373 (Mo.App.1977). The burden of going forward to rebut the effect of Powell's signature then shifted to Powell.

---

1. The pertinent part of this document reads:

    "That in consideration of funeral services rendered on the body of George E. Stewart, deceased, who died December 2, 1976, at Sacramento, Calif., and who was my Brother, said service being rendered at the request of the assignor, the said assignor does by these presents assign, transfer, and set over unto the Officer Funeral Home ... the following life insurance policies, certificates, or con- tracts, numbered 20–05314188, and dated June 15, 1976, said benefits being issued by the Reliable Life Ins. Co. of St. Louis, State of Missouri, and naming Ruth Powell beneficiary. It is expressly agreed and understood that this assignment is made after the death of the insured named in the above policy, ... and is an assignment of the beneficiary's interest or part interest in the above policies to Officer Funeral Home."

To meet her burden, Powell does not contend the document was not an assignment; nor does she contend that, if valid, the language of the document did not divest her of all her rights and interest in the policy; rather she contends her testimony, which the trial court could choose to believe, shows she did not intend to make an assignment.[2] We have carefully read the pertinent part of Powell's testimony cited by Powell and, contrary to Powell's interpretation, we find her testimony shows nothing more than she did not remember seeing the original of the document and did not remember signing it. Because Powell's testimony is critical, we quote the pertinent part in detail:

"Q [Reliable's Attorney]: Who paid for the funeral expenses?

A [Powell]: I paid part of it. The whole bill isn't paid.

Q Some portion of it still remains unpaid?

A Yes.

Q At the time of the arrangements for the funeral did you execute or sign any documents assigning any part of the policy to Officer Funeral Home, to your knowledge?

A No.

[Powell's Attorney]: As far as you remember that is.

THE WITNESS: Yes, as far as I remember.

.    .    .    .    .

Q [Defendant's Counsel]: Mrs. Powell, I am going to hand you what the court reporter has just marked as Defendant's Deposition Exhibit A. I will hand it to your attorney first and ask you if you can identify or know what that document is that is before you? Have you ever seen an original, it appears to be a copy obviously.

A I don't remember seeing this.

[Plaintiff's Counsel]: This is your signature, isn't it?

THE WITNESS: Yes. Can I ask where it came from?

[Plaintiff's Counsel]: It appears to be from Officer Funeral Home; it is an assignment that you apparently signed.

Q [Defendant's Counsel]: Do you remember any discussion with Officer about any insurance policy on Mr. Stewart's life, using that to pay the bill?

A I told them I had it.

Q But you don't really recollect signing this document, Defendant's Exhibit A; is that correct, ma'am?

A Yes, that's my signature so he must have given it to me to sign, I just don't remember.

Q What was the total bill, please?

A Twelve eighty three.

Q Twelve hundred eighty three dollars; is that correct?

A I think so.

Q And how much is—

A Outstanding?

Q Yes.

A Eight hundred some dollars.

.    .    .    .    .

Q Has Officer Funeral Home contacted you with regard to outstanding balance?

A No.

Q They haven't been after you to pay it, as far as you know?

A No.

Q Do you consider yourself to be the one obligated to pay it or is there anyone else?

A No, I am going to be the one to pay it.

Q And you have a present intention to do your best to pay that off; is that right?

A Oh, I will."

■ Whether cursorily read or carefully read, Powell's testimony merely shows she

---

**2.** Reliable apparently was willing to pay Powell the natural death benefits provided for by the policy. Powell does not contend, however, that Reliable, therefore, waived its right to assert or was estopped from asserting that Powell was not the real party in interest in this action on the policy.

does not remember signing the document. This implies nothing more than a lack or failure of memory. It cannot sustain a sensible inference that she did not or did intend to assign her rights and interest in the policy. Thus, Reliable's evidence on this issue stands undisturbed. Powell's signature admittedly was on the document and this implies Powell expressly agreed to and accepted its terms and conditions. *See, National Motor Club of Missouri v. Noe, supra; see also, Smith v. Worsham, supra.* The document was an assignment, and this assignment divested Powell of all her rights and interest in the policy, *e.g., Kershner v. Hilt Truck Line, Inc.,* 637 S.W.2d 769, 771–772 (Mo.App.1982). Thus, Powell was not the real party in interest in this cause of action on the policy. *See, e.g., C. & M. Developers, Inc. v. Berbiglia,* 585 S.W.2d 176, 181 (Mo.App.1979). She, therefore, could not prosecute this action in her name. Rule 52.01.

Accordingly, the judgment below is reversed, the cause remanded and the trial court is directed to dismiss Powell's petition.

SMITH, P.J., and PUDLOWSKI, J., concur.