## REYNOLDS *v.* JONES.

### Opinion delivered December 5, 1896.

ACTION—SPLITTING CAUSE.—A claim for damages for use and occupation of land is a single cause of action, and cannot be split into two actions. Thus, a judgment for damages for use and occupation of land for six months before the commencement of the action is a bar to a subsequent action for damages for its use and occupation prior to such six months.

JUDGMENT—RES JUDICATA.—A judgment against a guardian in his individual capacity for the recovery of damages for use and occupation of his ward's land will bar a second action brought against him as guardian to recover damages for the same use and occupation.

GUARDIAN AND WARD—ACCOUNTING.—A guardian, sued for a final accounting as such, will not be allowed for items of board, clothing, medicine, and tuition bills for which he manifestly did not intend to charge at the time the expenses were incurred.

Appeal from Randolph Circuit Court in Chancery.

JOHN B. McCALEB, Judge.

#### STATEMENT BY THE COURT.

This is a case from the Randolph circuit court, and originally an appeal to that court from the probate court of Randolph county. The subject-matter of the proceeding is the final account of Reynolds as guardian of Hattie Jones, nee Kelsey, and her exceptions thereto,

which exceptions were sustained, account re-stated accordingly, and ordered recorded, and an appeal to the circuit court, where substantially the same judgment was rendered, and from that this appeal is taken. Judgment against Reynolds as balance of account of $2,600.

Alva G. Kelsey, father of Hattie, the appellee herein, died in 1862, leaving surviving him his widow and the appellee, an only child, then an infant one year old, and seized and possessed of the S. W., S. E., and N. E., S. E., section 33, township 20 north, and range 3 east, and other lands in said county of Randolph, having resided on said 80 acres up to the time of his death. In 1864 the widow intermarried with D. W. Reynolds, the appellant herein, and they continued to reside on the place until the death of the widow of Kelsey, then the wife of Reynolds, in 1868, and the parties to this proceeding continued to reside there until the marriage of appellee with J. L. Jones in 1877, she being then sixteen years old. Reynolds continued to reside there until ejected in 1891.

After his marriage, Reynolds became administrator *de bonis non* of the estate of Kelsey, and sold the lands of the estate on the 22d of January, 1872, by order of the probate court to pay debts, one J. M. Shaver becoming the purchaser of the said eighty acres for the sum of $720 and receiving his deed dated April 1, 1872. The sale was approved by the probate court at its April term, 1872.

Shaver resold to Reynolds individually on the 28th of June, 1873, for $1,000; and afterwards Reynolds, treating the land as his own, put extensive improvements thereon to the value of $6,000, as he claimed.

After paying the debts of Kelsey's estate, Reynolds had on hand as administrator the sum of $269 in money, and in 1872 took out letters of guardianship, and became the guardian of appellee, charging himself as such with

the sum of $269. There is a controversy here as to
what disposition was made of this sum finally; appel-
lant claiming that he paid the same over to appellee,
through her husband, soon after their marriage, and
appellee denying that she had ever authorized such pay-
ment, and Jones that he received such sum for his wife.

In 1890, appellee brought suit in ejectment against
appellant individually for the eighty acres, on the
ground that the same, being the homestead of the fam-
ily, could not have been legally sold under order of the
probate court to pay debts, and claimed damages for
wrongful possession for six months next past. On the
final hearing of that cause in 1891, there seems to have
been an agreement in the nature of a compromise after
the case had been submitted to the jury, and the verdict
of the jury and the judgment of the court were ren-
dered accordingly, the plaintiff obtaining judgment for
sixty acres of the land and the $200 damages for the six
months use. In this suit defendant pleaded the statute
of limitations among other things.

There is a controversy between the parties as to the
meaning of the compromise, appellant contending that
it was intended as a settlement of all matters between
the parties in reference to the land, and appellee con-
tending that it was only an agreement to settle the mat-
ters in suit.

Having in this way settled the title of the land,
appellee then petitioned the probate court to cite appel-
lant to appear therein at the July term, 1891, and make
final settlement, he having never made any settlement
as guardian. In response to this citation, appellant filed
his final settlement, which was excepted to by the
appellee, principally because of his failure to charge
himself with the rents of the eighty acres from the
time the guardian got control of same as such till the

beginning of the six months next preceding the institution of the suit in ejectment.

In the course of the controversy over this settlement, appellant presented his account for board and maintenance of appellee, his ward, during the time she resided with him, taxes, improvements, etc.; so that the said back rents on the one hand, and the account for support, maintenance, taxes and improvements on the other, became the principal, if not the only, matter of controversy, and both claims were finally allowed by the circuit court, which left the balance aforesaid against appellant. The record fails to show exceptions by appellee.

*J. C. Hawthorne* for appellant.

The probate court had no jurisdiction to render a judgment for rents of lands held by one under a *bona fide* claim of ownership. 55 Ark. 222; 15 *id*. 381; 10 Paige, 40; art. 7, sec. 34, Const. 1874. The judgment of the Randolph court was a bar to a recovery in this suit. A judgment is conclusive, not only as to such matters as were determined, but as to every other matter which might have been litigated as an incident to or essentially connected with the subject-matter of the litigation, whether the same as a matter of fact was considered or not. Sand. & H. Dig., sec. 3583; 13 Am. St. Rep. 234; 5 *id*. 502, 509; 109 N. Y. 202; 20 Am. St. Rep. 301; 122 N. Y. 41; 21 *id*. 71; Freeman, Judg. 262. The demand for rents was entire and indivisible. When the demand is against the same person in a different capacity for the same wrongs, all must be joined in one suit. See 60 Mass. 103; 36 Am. Rep. 79; 21 Ala. 485; 19 Wend. 208; 15 Johns, 229; 16 *id*. 136; 13 Ohio St. 284; 18 S. W. Rep. 867; 126 Mass. 492; 29 N. E. Rep. 367; 41 N. W. Rep. 378; 1 Van Fleet, Former Adjudication, 276; 1 Wend. 487.

*S. A. D. Eaton* for appellee.

The probate court has power to compel appellant to account to appellee for rents and profits arising from her homestead. Appellant stood *in loco parentis*, and could not acquire her property, except in trust for her. 54 Ark. 636. The land was not assets in his hands as administrator, nor under his control as such. Thomps. Homestead & Ex. 546; 47 Ark. 454. The sale was void. Freeman, Judg. 117; Black, Judg. 218; Freeman, Void Jud. Sales, 2. His holding of the land was at all times as guardian of appellee, and he is estopped to set up any claim to rents and profits. 15 S. W. Rep. 159. As soon as appellant was appointed statutory guardian, he became liable to his ward for the rents and profits, and should have accounted for them to the probate court. Mansf. Dig., sec. 3493. He cannot complain of ignorance of the law. Perry, Trusts, 433 and 863; 42 Ark. 25; 9 Am. & Eng. Enc. Law, 106 (c). See also 14 Ark. 396; 23 *id.* 47; 29 *id.* 636; 37 *id.* 316. The probate court has authority to compel him as guardian to account for all property in his hands. 38 Ark. 494; 2 Pom. Eq. Jur. 961. The former suit was not a bar. It was against appellant individually; this suit is against him *as guardian*. Bigelow, Estop. 130; 2 Black, Judg. 548. There is no identity of parties. The provision of sec. 3583, Sand. & H. Dig., is not mandatory. Compare sec. 5703, subject 2, and sec. 5704, Sand. & H. Dig. Trustees must see that funds in their hands are paid to the person authorized to receive them. They are liable for mistakes. 2 Perry, Trusts, 296. A release is not binding unless the *cestui que trust* is fully acquainted her rights and the full liability of her trust. 2 *id.* 923; Bish. Eq. 234. A partial payment does not release the debt. 55 Ark. 369. When a ward is self-sustaining, it is error to allow compensation to a guardian for maintenance. 30

S. W. Rep. 995; 16 *id.* 358; 6 *id.* 68-71; 35 N. E. Rep. 709. Interest should have been computed at ten per cent. Mansf. Dig. secs. 3513, 3514; 38 Ark. 494; 16 S. W. Rep. 358.

As to splitting cause of action.

BUNN, C. J., (after stating the facts.) The principal question in the case is one of pleading, that is to say, whether or not appellee had a right to split up her claims for back rents, or for use and occupation, or for damages for the retention of the possession of her lands.

It is a well established rule of law that a single cause of action cannot be split, in order that separate suits may be brought for the various parts of what really constitutes but one demand. It is said by the court in *Dutton* v. *Shaw*, 35 Mich. 431, that "the principle which prevents the splitting up of causes of action and forbids double vexation for the same thing is a rule of justice, and not to be classed among technicalities." In *Damon* v. *Denny*, 54 Conn. 253, the court said: "Where a pending suit is one in which it is legally possible for a judgment to be rendered upon a cause of action alleged in the second, and was brought for the purpose of obtaining such a judgment, the plaintiff is bound to exhaust the possibilities of that suit, before subjecting the defendant to the cost of a second suit." See also *Hitchin* v. *Campbell*, 2 W. B1, 827; *Martin* v. *Kennedy*, 2 B. & P. 71; *Seddon* v. *Tutop*, 6 Term R. 607; *Thorpe* v. *Cooper*, 5 Bing. 116, 15 E. C. L. 387. The justice of the rule is however questioned by some courts and jurists, perhaps more, however, in its too extensive application than on any account of any injustice in it when applied under proper restrictions. Thus Brett., J., in *Brunsden* v. *Humphrey*, 14 Q. B. Div. 145, said: "When that rule is applied to damages which are patent, it is a good rule; but where damages are afterwards developed, it is not a rule to be commended. It is a rule which sometimes produces a harsh result,

and if it were now for the first time put forward, I could not consent to its being pushed to the length to which it has been sometime carried." In *Stickel* v. *Steel*, 41 Mich. 350, the principle is advanced that claims originally one and indivisible may become single and separate, and in turn may again return to their indivisible estate. Cooley, J., uses this language: "In short, if the two bills constituted one demand in their origin, they must have become two for all legal purposes when the one fell due before the other; and if united again by the other falling due, they would be again separated when the remedy on one was barred, or whenever anything occurred which should render one the subject of a suit when the other was not."

So much for the rule. It obtains in all the states of the Union and in England. The difficult thing is to apply the rule properly, that is, just what makes a single contract, giving only the one right of action, which cannot be split, is often a difficult question, and it is said that the cases are not altogether harmonious. "The bare fact that the two causes of action spring out of the same contract does not *ipso facto* render a judgment on one a bar to a suit on the other." *Perry* v. *Dickerson*, 85 N. Y. 345. "When several claims payable at different times arises out of the same contract or transaction, separate actions can be brought as each liability accrues." *Reformed Church* v. *Brown*, 54 Barbour, 191; *Sterner* v. *Gower*, 3 W. &. S. (Penn.), 136; *Union Ry. Co.* v. *Traube*, 59 Mo. 355; *Ryall* v. *Prince*, 82 Ala. 264. "Yet if no action is brought until more than one is due, all that are due must be included in one action; and if an action is brought when more than one is due, a recovery in that suit will be an effectual bar to a second action brought to recover the other claims that were due when the first was brought." *Reformed Church* v. *Brown*, *supra; Union Ry. Co.*

*v. Traube, supra; Nickerson* v. *Rockwell,* 90 Ill. 460. Instalments of rent are subject to the same rule as are other instalments of money due. An action may be brought as each instalment falls due, but all instalments due are but one cause of action. 1 Enc. Pl. & Prac., p. 155, and the cases there cited. These authorities seem to settle the question. It seems to us that a suit for damages for wrongfully withholding or for use and occupation is even more a single cause of action, if anything; than a contract rental to be paid in instalments.

<span class="margin">When matter is *res judicata.*</span> We are met at this stage of the discussion with the proposition that the doctrine of *res judicata* governs this case, rather than the rule of pleading which we have been discussing, and that the defendant guardian is, in effect, sued first in his individual capacity and then in this form of action as guardian, so that there are really two different defendants in the two actions. Having established this as a point of attack, it is next contended that the doctrine of *res judicata* does not apply, because the parties are not identical in the two suits. The authorities to which we have been referred to sustain this view are *McBurnie* v. *Seaton,* 111 Ind. 56; 2 Black, Judgments, 536; *Hall* v. *Richardson,* 22 Hun, 444; *Rathbone* v. *Hooney,* 58 N. Y. 463.

It will be seen that in the case of *McBurnie* v. *Seaton,* McBurnie being dead, his wife, to whom had been allotted the notes and mortgages involved, instituted the second suit, and the other unsuccessful suit by McBurnie in his lifetime on the same notes and mortgages as guardian was set up, and *res judicata* pleaded. The notes and mortgages were the property of McBurnie individually, and not as guardian, and for this reason his suit as guardian failed, and as a matter of course his wife was not estopped to sue on the notes of which she was the legal owner. The statement in 2 Black on Judgments is based on this case of *McBurnie* v. *Seaton.*

In *Hall* v. *Richardson*, 22 Hun, 444, the first action had been brought against Richardson, as executor of Sutton Hall, deceased, and was unsuccessful, because he was not liable as such. The second action involving perhaps something of the same subject was brought against him individually. The second suit was not barred by the first. The case reported in 58 N. Y. 463 was determined on a similar state of facts.

It will readily be seen that, even if we were determining the case at bar on the principles governing the subject of *res judicata*, these cases are inapplicable. In the case at bar the appellant, if liable at all, was liable throughout individually in the ejectment suit. Were it possible in any case for an action to be maintained against one, either individually or in his fiduciary capacity, it is not certain that *res judicata* could not be well pleaded in the second suit.

The several items allowed by the court below or named in the commissioner's report as credits to appellant, consisting of value of improvements, repairs and taxes paid, were involved in and settled by the ejectment suit; and the items of board, clothing, medicine, and tuition bills were evidently an afterthought, manifestly never intended to be made a matter of charge against the ward by the guardian, and therefore will be disallowed here. *As to guardian's account.*

This settles the controversy between counsel as to the real meaning of the compromise judgment in ejectment on principles of law, and we are relieved of the duty of attempting to do so on the facts of the controversy.

Reversed and remanded, with directions to enter judgment according to this opinion; appellee paying the cost of this appeal.