SHELL, GUARDIAN, *v.* SHEETS, GUARDIAN.

4-6390 152 S. W. 2d 301

Opinion delivered June 9, 1941.

*Pickens & Pickens, John Sherrill* and *Frank Wills,* for appellant.

*D. Leonard Lingo,* for appellee.

SMITH, J. E. B. Shell, a resident of Jackson county, died intestate in the year 1920. His estate consisted of approximately 240 acres of land, of which about 165 were in cultivation and constituted his homestead. He left considerable personal property and a life insurance policy for $2,000 payable to his two oldest children. The policy was written prior to the birth of two other children later born. Surviving him were his widow, Mrs. Ola Shell, and four children, Rudy, Mardell, Lois, and Junior, the three last named being the children by a former marriage. Rudy was his only child by Ola, and Rudy died two years after his father's death.

Mr. Shell was largely indebted, the exact amount of which does not appear except that there was an outstanding mortgage on the land to secure $2,600 of this indebtedness.

Mardell, the oldest of these children, was only eight years old at the time of the death of her father. The widow was appointed administratrix of her deceased husband's estate, and was also appointed guardian for his minor children. The personalty was consumed in paying the debts, and the widow waived her claim of dower in the personalty to permit this to be done, and there was no source of income of the estate except the rents of the land, which the court found averaged $600 per year. This finding is questioned, it being contended that the rents were greater; but we do not think the testimony shows that the net rents were in excess of that average amount. The widow paid, not only the general taxes, but the special assessments of a drainage improvement district as well as the necessary and indispensable

expenses of maintenance and repair. She kept the taxes paid. The testimony does not show how much of the rents was collected from the homestead as distinguished from the remainder of the land. But, from these rents, and without other income from the estate, the widow kept these children together and reared them. They were given all the school and other advantages which the community afforded.

As in too many other cases of this kind, the widow made none of the settlements required by law of her administration and guardianship. Her explanation of this failure was that there was nothing to report, as all income was consumed and barely sufficed to keep the family going. It was shown that Mardell worked occasionally in the field, but the widow worked there more frequently.

The $2,000 insurance money belonging to Mardell and Lois was invested, under the order of the probate court, in a real estate mortgage, which proved to be unfortunate, and from which a large loss was sustained, but no attempt was made to charge the widow with liability for the loss thus sustained.

On October 25, 1939, Birdie Sheets, as guardian for Mardell, an incompetent person, filed petition for citation of Mrs. Shell, alleging that Mardell was declared incompetent on February 4, 1938, by the probate court for the eastern district of Lawrence county.

Mrs. Shell filed a final account, according to which she was not indebted to her ward in any sum, but the balance was in her favor. Exceptions to this account were heard, which resulted in a judgment in favor of the ward in the sum of $1,980.20, from which judgment is this appeal, and from which judgment there is a cross-appeal by Mardell's present guardian.

It appears that Mrs. Shell gave bond as guardian in the sum of $10,000, the amount of which was later reduced to $1,000. The validity of this order of reduction is one of the several questions discussed in the briefs of opposing counsel; but this is a question which will not

require decision in view of the conclusions which we have reached on other features of the case.

In the findings of fact, upon which the judgment is predicated, it is recited that "The court disregards all items of charges and credits after Mardell became 21 years old in 1934 for want of jurisdiction."

It is true, of course, that Mrs. Shell should have filed regular reports of her administration and of her guardianship, and that she may be called to account for her failure to do so. It was said in *Campbell* v. *Clark*, 63 Ark. 450, 39 S. W. 262, that if this were not done, the door would be open for the perpetration of all manner of frauds against the estates of minors. That case is cited also in support of the proposition that, where a ward lives with her guardian as a member of his family, receiving board and clothing and rendering the ordinary household services required by parents of their children, such services will be presumed, in the absence of a clear showing to the contrary, to be a sufficient compensation for the ward's support. *Reynolds* v. *Jones*, 63 Ark. 259, 38 S. W. 151, is to the same effect.

It is, therefore, insisted that, as Mrs. Shell made no charge for which she claimed credit, she should not now be allowed credit for the living expenses of her ward. There are two answers to this contention. It is provided by statute (§ 6297, Pope's Digest) that "The probate court may direct a guardian to expend for the maintenance and education of his ward a specified sum, although such sum may exceed the income of the ward's estate; but, without such direction, the guardian shall not be allowed, in any case, for the maintenance and education of the ward, more than the clear income of the estate."

It is an undisputed fact that the widow and her wards had their living from the income of the land, which was all of the estate, and we accept without hesitation the statement of the widow that this barely sufficed. The widow is not asking compensation for having paid the living expenses of her wards. She asks only that she be not required to pay them now their shares of the rents

and income which were expended during the minority of the children for their support. She made these expenditures without an order of the court, but she does not ask for anything more than we think she is entitled to have credit for, this credit not exceeding the clear income of the rents and the actual value of the necessities furnished the wards.

The second reason is that the guardian has the acquittance of her wards. It appears that through the foreclosure of the mortgage securing the loan of the insurance money above referred to title had been secured to the mortgaged land, known as the Curry place, which Mardell and her sister Lois wished to sell to one Bud House. An attorney was consulted, and a plan was agreed upon, whereby the wards gave their guardian a receipt in full for all demands against the guardian, and she joined with her wards in a conveyance of the land to House. As we understand the record, both Mardell and Lois were then of age, but Mardell was of legal age at that time, whether her sister Lois was or not, and Lois is not a party to this suit. Mrs. Shell testified that her home was destroyed by fire and the receipt was lost in the fire, but she is fully corroborated in this statement by the testimony of the attorney who assisted in making the sale and deed to House. Mardell and Lois were present at the trial, and neither denied this testimony.

Moreover, in 1937, when both Mardell and Lois were of full age and more than 21 years old, they requested Mrs. Shell to make partition of the estate. The right of the daughters to share in the rents of the homestead had then expired. There was then made what appears to have been a family settlement. It was agreed that the lands should be divided into four equal parts, one to the widow and an equal part to each of the three children. No contention was made that the guardian was then indebted to her wards. Three commissioners were appointed, who caused a survey of the lands to be made, dividing it into four parts of an approximately equal area. Deeds were exchanged to effect the partition. All of the children were then of age except Junior, whose

disability of minority was removed so that he could join in the partition proceedings.

It appears to us that this was a family settlement, which would be disturbed if the prior transactions between the parties were inquired into. The law favors family settlements, and will uphold them when fairly made.

For the reasons herein stated, we think the suit is without equity, and should be dismissed for that reason.

It is insisted, however, that Mardell is *non compos,* and was so adjudged in 1938. But this is a date subsequent to the receipt given in 1933 and the family settlement effected in 1937. It is insisted, however, that the testimony shows that Mardell was incompetent prior to both of the last named dates.

In support of this contention, Dr. J. L. Merrill was called as a witness; but his testimony was excluded for the reason, as stated by the court, that "It would have to relate back to the date of sale and before the execution of the releases to be competent." Dr. Merrill's examination was made in the fall of 1939. He expressed the opinion that "I do not think she is very competent," as she appears to have the mind of a child. He made no physical examination and knew nothing of Mardell's history, and his testimony shows that his examination was somewhat superficial.

Bud House was also called as a witness upon this issue; but his testimony may not be given much weight when it is remembered that he took a deed from Mardell for her interest in the Curry land.

James Alexander was also called as a witness upon this issue. He admitted that he had never been to school a day in his life. He was asked, "Is she a bright and intelligent girl?" and he answered, "Well, no, she is not." He expressed the opinion that Mardell was not competent to transact business of a legal nature, but he stated no facts upon which that opinion was based.

The court below did not find that Mardell was incompetent. No finding upon that question was made.

The judgment from which is this appeal is in favor of Birdie Sheets, guardian for Mardell Shell, an incompetent; but this, we understand, to be a mere designation of the capacity in which Mrs. Sheets sued. The adjudication of Mardell's incompetency in 1938 is *prima facie* evidence only of her incompetency at that time. *Eagle v. Peterson,* 136 Ark. 72, 206 S. W. 55, 7 A. L. R. 553. And it was said in the case of *Shores-Mueller Co. v. Palmer,* 141 Ark. 64, 216 S. W. 295, that the fact that a person was adjudged insane after he had made a certain contract does not establish his insanity at the time he made the agreement.

It is insisted that Mrs. Shell herself attempted to have Mardell adjudged insane. Mrs. Shell was asked, upon her cross-examination, the condition of Mardell's mind in 1937, and she answered that "It was all right so far as I know." She admitted that she "preferred a charge against Mardell in the clerk's office so that the sheriff would come and get her." The date of this event is not stated. Mrs. Shell explained her reason for doing so, that Mardell would not stay at home, but "was living with her man," by whom she had an illegitimate child. Mrs. Shell thereafter took Mardell and her child into her home. It would appear that Mrs. Shell was complaining more of Mardell's conduct than of her mental condition.

There is a circumstance which strongly indicates that no advantage has been taken of Mardell, and that she has not been defrauded, and that there is no equity in her case. It is that her sister executed a duplicate of the 1933 receipt which had been lost.

Upon the whole case we are of opinion that there is no equity in the case, and the judgment is therefore reversed and the cause dismissed.