Howard SKAGGS *v.* Charles Edward CULLIPHER

CA 96-258                                        941 S.W.2d 443

Court of Appeals of Arkansas
Divisions I & IV
Opinion delivered April 2, 1997

*David J. Potter,* for appellant.

*Wright, Chaney, Berry & Daniel, P.A.,* by: *William G. Wright* and *Edward M. Slaughter,* for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Howard Skaggs entered into a compromise settlement with appellee Charles Cullipher to avert litigation of a will contest. Skaggs and Cullipher were subsequently appointed co-administrators of the estate. Skaggs sought to bring wrongful-death and survival actions against Cullipher some nine months after petitioning that the estate be closed, but prior to completing all steps necessary to close the estate. Skaggs appeals a probate court order granting Cullipher's motion for summary judgment and motion to dismiss the wrongful-death and survival actions. We reverse the probate court's findings that the estate was closed by operation of law, and that the settlement agreement precluded the wrongful-death action, and remand.

On October 3, 1992, Sophia Morris Cullipher died a few hours after being run over by a combine operated by her husband, Charles Edward Cullipher, the appellee in this case. Mrs. Cullipher had prepared a Last Will and Testament that could not be found after her death. On October 8, 1992, Mrs. Cullipher's

brother, Howard Skaggs, the appellant in this case, filed a petition in Miller County Probate Court to restore the lost will and appoint him as executor. Filed with his petition was a hand written draft and a typed copy of the will, both prepared by Mrs. Cullipher's attorney. These documents named Howard Skaggs as executor and primary beneficiary, and left Charles Cullipher, the decedent's spouse, nothing.

On October 23, 1992, Cullipher filed a petition opposing probate of the alleged lost will. The petition prayed that an intestacy be declared and that Cullipher be appointed administrator. Since Mrs. Cullipher had no lineal descendants, Cullipher was the sole heir at law. On November 5, 1992, the Miller County Sheriff's Department began an investigation into the death of Mrs. Cullipher, but ultimately, no criminal charges were ever filed against Cullipher.

On November 6, 1992, Cullipher joined the devisees of the lost will in a settlement styled "Memorandum Agreement," that averted litigation of the will contest, and recited as its purpose to avoid "the expenses, delay, and uncertainties of outcome in litigation involving [the] lost will." Accordingly, it purported to be a "compromise and settlement of all matters involved in the administration and distribution of the estate of the decedent." Parties to the Memorandum Agreement included Skaggs, his spouse, daughter, son-in-law, and two minor grandchildren, one of Mrs. Cullipher's three living sisters, and Cullipher. However, several potential beneficiaries under the Arkansas Wrongful Death Statute, Ark. Code Ann. § 16-62-102(d) (1987), including Mrs. Cullipher's mother, two sisters and two brothers, were not made parties to the settlement. The Memorandum Agreement was filed along with a petition for approval of the settlement in the Probate Court of Miller County and was approved by an order which also appointed Skaggs and Cullipher as co-administrators.

Administration of the estate proceeded to distribution of the inventoried assets and payment of attorney's fees, and the co-administrators petitioned to close the estate. An order was entered on July 1, 1993, approving final distribution and discharge of the

personal representatives and closing of the estate "upon report of such payments and distribution." No such reports were ever filed.

On March 10, 1994, after engaging new counsel, Skaggs filed a wrongful-death complaint in Miller County Circuit Court, and moved in Miller County Probate Court to reopen the estate to pursue a survival action and wrongful-death claim. The motion was granted on March 14, 1994, by order which reopened the estate, authorized Skaggs to proceed against Cullipher in his individual capacity, and barred Cullipher from serving as co-administrator. However, on October 18, 1994, the Miller County Probate Court granted Cullipher's motion to dismiss and for a judgment as a matter of law and motion for summary judgment to enforce the family settlement agreement. The order stated that the estate of Mrs. Cullipher was deemed closed by the July 1, 1993, order and directed Skaggs to dismiss with prejudice his wrongful death action pending in Miller County Circuit Court.

Skaggs raises the following four issues in his appeal from the October 18, 1994, order: (1) the court erred in finding the estate was closed or that it lacked jurisdiction to reopen the estate; (2) the court erred in granting summary judgment; (3) the court erred in finding that the Memorandum Agreement settled and released Cullipher from the wrongful death cause of action filed on behalf of the statutory heirs; and (4) the court erred in finding that the Memorandum Agreement settled and released the estate's survival cause of action against Cullipher.

### 1. Closure of the estate

Skaggs first argues that the trial court erred in finding the estate was closed. He argues alternatively that even if the estate was closed, the court erred in finding that it lacked jurisdiction to re-open the estate based upon Ark. R. Civ. P. 60(b), because Ark. Code Ann. § 28-53-119(a)(1) (1987) specifically provides for reopening a probate estate. We do not reach the issue of whether the probate court had jurisdiction to reopen the estate because we agree that the estate was not closed.

In its order granting Cullipher's motion for summary judgment and motion to dismiss, the probate court found as a

matter of law that the estate of Mrs. Cullipher was closed by its July 1, 1993, order even though certain ministerial duties had not been discharged. Skaggs argues that the estate was never closed, because the July 1, 1993, order required the filing of a report of final payments and distribution to officially close the estate. It is undisputed that the report was never filed. Skaggs further points to the fact that the probate court acknowledged that the estate was open in a Memorandum Opinion of September 28, 1994, when it directed him to complete the "ministerial duties" of the administrator and close the estate within thirty days. This language was inexplicably omitted in the October 18, 1994, order.

On the other hand, Cullipher contends that the trial court was correct in finding the estate closed for either of two reasons: (1) failure to file the administrator's final report as required by the plain language of the July 1, 1993, order did not leave the estate open "for all purposes," and the probate court retained jurisdiction, if at all, only for the specific and limited purpose of accepting the filing of the final report; or (2) assuming the estate remained open for all purposes, the estate was closed by operation of law due to the failure of Skaggs to timely execute his duties as co-administrator.

■ We do not agree with either of Cullipher's contentions. He cites no authority to support his contention that the estate remained open for only a "limited purpose." With regard to his second contention, Cullipher offers Ark. Code Ann. § 28-52-103 (1987) as authority for the proposition that the estate at some time closed through operation of law; this argument is not persuasive. Although § 28-52-103 provides that a probate court may compel an administrator to discharge his or her lawful duties, nowhere does the statute provide for the closing of an estate independent of affirmative action by a probate court.

■ Further, Cullipher's assertion that Skaggs's failure to timely close the estate in contravention of Ark. Code Ann. § 28-52-102(a) (1987) allows the estate to be deemed closed on equitable doctrines is equally unpersuasive. This statute merely states "a personal representative shall close the estate as promptly as practicable." *Id.* Moreover, this argument ignores the fact that Cul-

lipher was a co-administrator of the estate along with Skaggs, and also did not file the final report required to close the estate, and does not explain why justice demands that the probate court relieve Cullipher of a burden created by his own inaction. Clearly, Cullipher could have sought closure of the estate by filing the final report, or the probate court could have compelled completion of the remaining ministerial duties and then ordered the estate closed. Neither course of action was taken, and we know of no authority by which an open estate may be closed other than by order of the probate court.

## 2. Summary judgment on disputed issues

■ Cullipher next argues that the trial court erred in granting a summary judgment on disputed issues. In a memorandum opinion, the probate court found that Skaggs was aware, or should have been aware of the legal claims that allegedly existed for the wrongful death of Mrs. Cullipher at the time he signed the family settlement agreement. Skaggs contends that he was not aware that the estate had a cause of action against Cullipher until he consulted with his present attorney. We do not find any merit to this argument because ignorance of one's legal rights cannot be asserted as a basis for the failure to pursue a cause of action. *See Wilson v. G.E. Capital*, 311 Ark. 84, 87, 841 S.W.2d 619, 620-21 (1992).

## 3. Wrongful-death action

Skaggs's third assertion is that the court erred in finding that the Memorandum Agreement settled and released the cause of action for wrongful death filed on behalf of the statutory heirs. In its memorandum opinion, the trial court found that the Memorandum Agreement that averted litigation of the will contest was a family settlement agreement as a matter of law. The trial court also found that the agreement was enforceable and should be enforced, and that the wrongful-death action pending in circuit court was in contravention of the agreement. In the order granting defendant's motion for summary judgment and motion to dismiss, the trial court found that the language of the family settlement agreement released all claims which the estate of Mrs.

Cullipher and the parties to the agreement could have pursued between themselves arising from her death, including an alleged wrongful-death suit against Cullipher.

We agree with Skaggs that the wrongful-death claim did not fall under the purview of the Memorandum Agreement. While the Arkansas Wrongful Death Statute requires that the action be brought by the personal representative of the deceased person, Ark. Code Ann. §16-62-102(b) (Supp. 1995), the statute states further that "[n]o part of any recovery referred to in this section shall be the subject of the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person." Ark. Code Ann. § 16-62-102(e) (Supp. 1995).

The Arkansas Supreme Court has interpreted the role of the personal representative under the Wrongful Death Statute to be one of a mere conduit that allows the proceeds from a successful suit to reach the beneficiaries under the statute. Accordingly, these proceeds do not become part of the estate. *Dukes v. Dukes*, 233 Ark. 850, 349 S.W.2d 339 (1961).

Skaggs contends, and we agree, that there is no language in the Memorandum Agreement which would serve to release Cullipher from a wrongful-death action. The agreement recites as its purpose to avoid "the expenses, delay, and uncertainties of outcome in litigation involving [the] lost will," and it purports only to be a "compromise and settlement of all matters involved in the administration and distribution *of the estate of the decedent*." (Emphasis provided.) We further concur that the agreement is ineffective as a settlement of the wrongful-death action because it was not signed by all of the persons with statutory rights to the proceeds. The statute defines the parties in interest in a wrongful-death suit as follows:

> The beneficiaries of the action created in this section are the surviving spouse, children, father and mother, brothers and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased person stood in loco parentis to.

Ark. Code Ann. § 16-62-102(d) (Supp. 1995). In this case, several statutory beneficiaries including Mrs. Cullipher's mother, two

of her sisters, and one of her brothers, were not made parties to the settlement. If indeed the settlement agreement was intended to settle the wrongful-death claim, and in effect relinquish the rights of the statutory heirs, then those persons had to be made parties to the agreement. In *Wallace v. King*, 205 Ark. 681, 170 S.W.2d 377 (1943), the Arkansas Supreme Court held that where a settlement agreement was not signed by all interested parties, it was not binding even on those who did actually sign the agreement.

█ For the foregoing reasons, we hold that the trial court erred in finding that the wrongful-death action filed against Cullipher was in contravention of the settlement agreement.

Our holding is primarily premised not on who actually signed the agreement, as the dissent by Chief Justice Robbins contends, but upon what the agreement purports to settle — not "all claims between the parties" but rather all matters involved in the administration and distribution of Mrs. Cullipher's *estate*. Consequently, the rationale for enforcing the agreement with regard to claims which would accrue to the estate, *i.e.*, pain and suffering, medical expenses and funeral expenses, of the decedent, does not serve to also foreclose a wrongful-death claim not due or owing to the estate, whether the agreement is signed by the statutory beneficiaries of the wrongful-death action or not. Moreover, the fact that only the beneficiaries named in Mrs. Cullipher's will and her sole intestate heir-at-law, her spouse, signed the settlement agreement supports a finding that the agreement compromised and settled only matters involved in her estate.

## 4. Survival action

We reach a different conclusion with regard to Skaggs's argument that the court erred in finding that the agreement settled and released the estate's survival cause of action against Cullipher. Skaggs contends that the only intention of the parties to the Memorandum Agreement was to settle the division of assets and debts then known to exist in the estate. He suggests that a careful reading of the agreement and all other documents associated with the estate will prove that they contained no language that could

reasonably be construed to constitute a release of all claims against Cullipher.

■ However, in this action, Skaggs is acting to marshal assets that will, if the suit succeeds, become part of the estate. The plain language of the agreement states that it is a "compromise and settlement of all matters involved in the administration and distribution of the estate of the decedent." Moreover, the agreement was executed by all parties designated as beneficiaries under the lost will and by Cullipher, the sole heir-at-law to the estate. The administrator is empowered by statute to make settlements on behalf of the estate. Ark. Code Ann. § 28-49-104(a) (1987) states in pertinent part:

> When it appears to be for the best interest of the estate or in the case of an action for wrongful death or for the best interest of the estate or widow and next of kin, the personal representative, upon the authorization of or approval by the court, may effect a compromise settlement of any claim, debt, or obligation *due or owing to the estate, whether arising in contract or tort. . . ."*

(Emphasis supplied.)

■ Skaggs argues that the agreement should fail because it does not contain all of the elements of a contract, however, he does not dispute the trial court's finding that the Memorandum Agreement was a family settlement agreement as a matter of law. Such agreements are afforded a legal status distinct from typical contracts, and will be enforced without closely scrutinizing the consideration of the transaction or the strict legal rights of the parties. *Giers v. Hudson*, 102 Ark. 232, 143 S.W. 916 (1912). *See also Shell v. Sheets*, 202 Ark. 708, 152 S.W.2d 301 (1941). Accordingly, we do not agree that the trial court erred in finding that the Memorandum Agreement settled the survival action that Skaggs sought to bring on behalf of the estate of Mrs. Cullipher.

As to Judge Rogers's concurring and dissenting opinion that the probate court lacks jurisdiction over torts, the authority upon which she relies stands only for the proposition that a probate court may not litigate tort claims or deal with such claims on a substantive basis. Two of the cases cited, *Eddleman v. Estate of Farmer*, 294 Ark. 8, 140 S.W.2d 141 (1987) and *In re Morgan*, 310

Ark. 220, 833 S.W.2d 776 (1992) involved the attempt to try tort cases in probate court. The other case, *Carpenter v. Logan*, 281 Ark. 184, 662 S.W.2d 808 (1984), affirmed the probate court's dismissal of letters of administration for the estate of an unborn fetus, but contained dicta that a *wrongful-death* action by the heirs at law would not be precluded. We find that the probate court's exercise of jurisdiction in this case was not an attempt to litigate the tort claim.

A probate court has constitutionally vested jurisdiction over the actions of persons appointed to act on behalf of an estate. Ark. Const. art. 7, § 34. The probate court will therefore have some superintending authority over wrongful-death actions because only a personal representative may bring a survival action if one has been appointed. Ark. Code Ann. § 16-62-102(b) (Supp. 1995); *see, e.g., Pickens v. Black*, 316 Ark. 499, 872 S.W.2d 405 (1994). Moreover, it is clear that probate courts have jurisdiction with regard to the *settlement* of tort claims, pursuant to Ark. Code Ann. § 28-49-104(a) (1987). Furthermore, probate courts have the authority to determine whether there has been a family settlement agreement in the course of approving distribution of estate assets. *Alexander v. First National Bank of Fort Smith*, 275 Ark. 439, 631 S.W.2d 278 (1982). In short, a personal representative has the authority to settle tort claims *due the estate*, and the probate court has the authority to approve such settlements. This is no more than the probate court did in this instance — it determined that a family settlement agreement had been reached which encompassed such a claim.

Affirmed in part, reversed in part, and remanded.

ROBBINS, C.J., CRABTREE, ROGERS, PITTMAN, and NEAL, JJ., agree as to Part I and II.

CRABTREE, J., agrees as to Part III, and ROGERS and PITTMAN, JJ., concur in the result.

ROBBINS, C.J., and NEAL, J., dissent as to Part III.

ROBBINS, C.J., CRABTREE, and NEAL, JJ., agree as to Part IV.

ROGERS and PITTMAN, JJ., dissent as to Part IV.

JOHN B. ROBBINS, Chief Judge, concurring in part and dissenting in part. While I agree with much of Judge Roaf's opinion, and for that reason concur in part, I do not believe that the trial court erred in its finding pertaining to the action filed by Howard Skaggs in the Miller County Circuit Court. The probate court held that the family-settlement agreement released all claims that the estate and the parties to the agreement could have pursued between themselves arising from the decedent's death, and that the action filed by Howard Skaggs in the Miller County Circuit Court was in contravention of this family-settlement agreement. The probate court could properly so hold.

Judge Roaf's opinion affirmed the probate court's finding that the family-settlement agreement constituted a release of any survival action that the estate may have had against appellee. Her opinion does so because the family-settlement agreement was executed by appellee, who stood to inherit the decedent's entire intestate estate as surviving spouse, and all parties designated as beneficiaries under the decedent's lost will. To paraphrase her rationale: inasmuch as all persons interested in the estate, including the beneficiaries under the decedent's lost will and the decedent's surviving spouse, have joined in the family-settlement agreement, they should be bound to it because such agreements are favored at law and will be enforced without scrutinizing the strict legal rights of the parties. Judge Roaf cites *Giers v. Hudson*, 102 Ark. 232, 143 S.W. 916 (1912), and *Shell v. Sheets*, 202 Ark. 708, 152 S.W.2d 301 (1941). I would add *Jones v. Balentine*, 44 Ark. App. 62, 866 S.W.2d 829 (1993).

I submit that this same rationale should apply to the issue addressed in section number three of Judge Roaf's opinion. I believe that she errs by accepting as relevant the major premise on which the appellant's argument is based, i.e., that a valid settlement of a wrongful-death action must be signed by all statutory beneficiaries. This premise is irrelevant, because the trial court did not find that the family-settlement agreement settled and released the cause of action against appellee for wrongful death on behalf of *all* of the decedent's heirs. Although appellant refers to "heirs" of the decedent, his brief clarifies that this reference is meant to refer to the statutory beneficiaries listed in the wrongful-

death statute, which includes "the surviving spouse, children, father and mother, brothers, and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis." Ark. Code Ann. § 16-62-102(d) (Supp. 1995). Judge Roaf's opinion notes that all of these statutory beneficiaries did not join in signing the family-settlement agreement and agrees with appellant that if the settlement agreement intended to settle the wrongful-death claim then all of these statutory beneficiaries had to be made a party to the agreement. Judge Roaf cites *Wallace v. King*, 205 Ark. 681, 170 S.W.2d 377 (1943), as holding that where a settlement agreement was not signed by all interested parties, it was not binding even on those who did actually sign the agreement. I submit, however, that the holding of *Wallace* is that a contract prepared for and intended to be signed by all of the parties named in it does not bind those who sign it if any of those who were to have signed it refuse to do so. The family-settlement agreement involved in this case was signed by all persons who were intended to sign it.

A close reading of the probate court's order reveals that it did not hold that a statutory beneficiary who was not a party to the family-settlement agreement could not bring a wrongful-death action. It held that the family-settlement agreement released all claims between *the parties to the agreement* arising from the decedent's death, including a wrongful-death suit against appellee, and that the circuit court action brought by Howard Skaggs contravened this agreement. Section I of the complaint filed by Howard Skaggs makes it quite clear that, rather than a statutory wrongful-death action, Mr. Skaggs was seeking recovery only for and "*on behalf of the beneficiaries under the will and testament of Sophia E. Cullipher.*" The beneficiaries under the purported will of Sophia E. Cullipher were Howard Skaggs, Debra Johnson, Darlene DeLaughter, Emma Lang, Abby Lynn Johnson, and Emily K. Johnson. All of these beneficiaries joined in and were parties to the family-settlement agreement. The statutory beneficiaries under the wrongful-death statute include two of the devisees under the will, but also include the following persons for whose benefit the circuit action was not brought: the decedent's mother, Frances Skaggs; the decedent's sisters, Betty Woods and Annie Dale Cashen; and the decedent's brothers, Lewis Skaggs and Charles Skaggs. Although denominated a wrongful-death

action, the complaint only sought recovery for two of these seven statutory beneficiaries. Consequently, it was not a statutory wrongful-death action but something else. But whatever it was, all of the persons for whom recovery was sought in the circuit court action were signatories to the family-settlement agreement.

I think it inconsistent and illogical to hold that the family-settlement agreement does not bar a wrongful-death action because only two of seven statutory beneficiaries were parties to the agreement, yet permit appellant to seek relief for only these same two statutory beneficiaries in his circuit court action. I would be inclined to agree with Judge Roaf's opinion on this issue if the circuit action had been for the benefit of even one of the wrongful-death beneficiaries who had not joined in the family-settlement agreement. But it was not, and I think it is error to base a decision on the rights of persons who were not before the trial court, nor before us on this appeal, and who do not stand to gain or lose by our decision in this matter.

I would affirm the trial court on all issues, except its holding that the probate proceeding had been closed by its order of July 1, 1993.

With respect to the concurring opinion of Judge Rogers, in which she opines that the probate court lacked subject matter jurisdiction to address the issues of the survival action and putative wrongful-death action in circuit court, I disagree for the following reasons. As discussed above, I believe the probate court's action in finding that the family-settlement agreement released all claims that the parties to the agreement could have pursued between or among themselves arising out of the decedent's death, and that Mr. Skagg's circuit court action violated this agreement, did not constitute an exercise of tort-claim jurisdiction. The probate court was simply enforcing a family-settlement agreement in the course of the probate proceeding. Nor was it an original action to cancel or enforce an alleged family-settlement agreement where chancery jurisdiction might attach. *See Alexander v. First Nat'l Bank of Ft. Smith*, 275 Ark. 439, 631 S.W.2d 278 (1982). A probate court has jurisdiction to interpret and enforce a family-settlement agreement during the course of the administration of a decedent's estate. *Id.*

The cases cited in Judge Rogers's concurring opinion deal with the issues of whether a probate court could try a tort claim and whether probate could determine if a tort claim existed that could be tried. *In re Morgan*, 310 Ark. 220, 833 S.W.2d 776 (1992); *Eddleman v. Estate of Farmer*, 294 Ark. 8, 740 S.W.2d 141 (1987); *Carpenter v. Logan*, 281 Ark. 184, 662 S.W.2d 808 (1984). Here, the probate court neither undertook to try a tort claim nor purported to rule on whether a tort claim existed that could be filed in circuit court. It simply held that the parties to the family-settlement agreement could not initiate this action and that Mr. Skaggs, who had obtained an order from the probate court authorizing him to file the circuit court action, should dismiss it because it violated the family-settlement agreement.

NEAL, J., joins in this opinion.

JUDITH ROGERS, Judge. The opinion authored by Judge Roaf more than adequately sets out the facts of this case as are necessary for an understanding of the various opinions offered in this matter; therefore, I will not recite them here. Also, since this court is in agreement that the probate court erred in ruling that the estate was closed, I will not revisit that issue in this opinion. Although I concur in the reversal of the probate court's decision ordering the dismissal of the wrongful-death action, I agree to reverse on a different and more fundamental ground, which is that the probate court was without jurisdiction to determine whether the family settlement agreement operated as a bar to the pending wrongful death action in circuit court. For this reason, I dissent to an affirmance of the probate court's decision that the estate's survival action cannot be maintained.

In its order, the probate court ordered the dismissal of the wrongful-death action based on a finding that the family settlement agreement released all claims which the parties could have pursued. In Arkansas, however, the probate court is a court of special and limited jurisdiction, having only such jurisdiction and powers conferred by the constitution or by statute, or necessarily incidental to the exercise of the jurisdiction and powers specifically granted. *Carpenter v. Logan*, 281 Ark. 184, 662 S.W.2d 808 (1984). It is well settled that a probate court does not have jurisdiction to render decisions dispensing with tort claims. *In re Morgan*, 310 Ark. 220, 833 S.W.2d 776 (1992); *Eddleman v. Estate of*

*Farmer*, 294 Ark. 8, 740 S.W.2d 141 (1987); *Carpenter v. Logan, supra*. In *Eddleman v. Estate of Farmer, supra*, the appellant had filed a contingent tort claim against the estate in the probate court. The probate court accepted the appellee's defense and ruled that the statute of limitations had run on appellant's claim. On appeal, the supreme court reversed, holding that the probate court did not have jurisdiction to rule on the tort suit and that its decision on the statute of limitations issue was void. In the case of *In re Morgan, supra*, the supreme court affirmed the probate court's dismissal of a tort claim based on its ruling in *Eddleman* that a probate court is without jurisdiction to decide tort claims. And, in *Carpenter v. Logan, supra*, the appellant asked the supreme court to determine, in an appeal from a probate court, whether an unborn, viable fetus born dead as a result of trauma caused by negligence or willful and wanton misconduct has a cause of action against the tortfeasor for wrongful death. The court declined to address the issue stating that the action, if any, was a tort action cognizable in circuit court and that it would not entertain it on appeal from an *ex parte* probate proceeding.

It should be clear from these decisions that the probate court in this instance exceeded its jurisdiction by deciding that the claim for wrongful death was barred by the family settlement agreement. By ruling on the appellee's motion for summary judgment, the court effectively exercised jurisdiction over the tort claim pending in circuit court. Indeed, the court reached far beyond the limits of its jurisdiction by ordering the dismissal of that action. In sum, the court determined what amounts to a defense to that action which, like the statute of limitations ruling in *Eddleman*, is void and thus cannot be sustained on appeal. Because this portion of the probate court's decision is void, it is not necessary or even proper for this court to offer any opinion as to the merits of appellee's motion for summary judgment. This same jurisdictional impediment applies equally to this court's decision to affirm the ruling that the release acts as a bar to the estate's survival action. That decision is also beyond the probate court's jurisdiction; therefore, I must respectfully dissent to an affirmance on that point.

In response to the criticism of my view in the other opinions, I respectfully submit that the pursuit of a wrongful-death action has nothing to do with the administration of an estate. Further-

more, although Ark. Code Ann. § 28-49-104(a) (1987) does provide for the probate court's approval of an executor's proposed settlement of a wrongful-death claim, there is nothing in the probate code which requires the executor or any interested party to seek permission of the probate court before pursuing such an action. The fact remains that the probate court ordered the dismissal of the action, which is a decision it was without jurisdiction to make.

I am authorized to state that Judge PITTMAN joins in this opinion.